205 N.J. Super. 428 (1985)
501 A.2d 182
TORCON, INC., PLAINTIFF,
v.
ALEXIAN BROTHERS HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, AND GERARD JOSEPH OAKLEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Union County.
Decided July 26, 1985.
*430 Robert S. Peckar, for plaintiff (Peckar & Abramson, attorneys).
A. Dennis Terrell, for Alexian Brothers Hospital (Shanley & Fisher, P.C., attorneys).
David Suarez, for Gerard Joseph Oakley (Suarez & Suarez, attorneys).

OPINION
WERTHEIMER, J.S.C.
This matter was heard on remand from the Appellate Division to determine, after a hearing pursuant to Lopez v. Swyer, 62 N.J. 267 (1973): (1) the applicability of the "discovery rule" to the facts of this case, and (2) if applicable, to rule on the timeliness vel non of a Demand for Arbitration.
On December 7, 1981 Alexian Brothers filed a Demand for Arbitration with respect to two contracts. One contract required plaintiff, Torcon, Inc., to perform construction work for the hospital and the other involved Oakley as architect on the project. Each contract contained an arbitration clause which provided that no Demand for Arbitration could be made if legal proceedings would have been barred by the applicable Statute of Limitations.
*431 In response to the Demand for Arbitration, Torcon filed a Verified Complaint and Order to Show Cause to enjoin the arbitration on the grounds that the Demand for Arbitration was untimely and, therefore, barred by virtue of the aforementioned contract. The Chancery Division, Union County, held that N.J.S.A. 2A:14-1.1 (the ten year Statute of Limitations) controlled and, therefore, the Demand for Arbitration was timely. The Appellate Division reversed holding:
Though N.J.S.A. 2A:14-1.1 may sometimes bar an action that might otherwise be timely, if an action is barred by 2A:14-1 it cannot be saved by N.J.S.A. 2A:14-1.1. See O'Connor v. Altus, 67 N.J. 106, 122-123 (1975).
The Demand for Arbitration was filed on December 7, 1981. Therefore, if it is found that either the cause of action arose more than six years before that date or that the discovery rule does not affect the running of the Statute of Limitations, then the Demand would be untimely.
The seminal "discovery rule" case in this State is Fernandi v. Strully, 35 N.J. 434 (1961). Our Supreme Court recognized therein that there were certain "`class(es) of cases' where the period of limitations may and should fairly and justly be said to begin to run when the plaintiff knows or has reason to know of this cause of action." Id. at 450 (Emphasis supplied). Fernandi was a medical malpractice case wherein a foreign object (a wing nut) remained in plaintiff's abdomen after total hysterectomy surgery. In balancing the interests involved, the Supreme Court emphasized that plaintiff's claim did not "raise questions as to her credibility" ... that "the lapse of time (did) not entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim" and "the circumstances (did) not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights." The Court, however, limited its ruling to the foreign object medical malpractice case.
Since Fernandi the discovery rule has been held applicable to cases involving the six-year period of limitations, See New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968), *432 concerning an alleged error in a land survey; Diamond v. New Jersey Bell Telephone Co., 51 N.J. 594 (1968), alleging negligent installation of an underground conduit that caused flooding on plaintiff's property; Federal Insurance Co. v. Hausler, 108 N.J. Super. 421 (App.Div. 1970), where it was held that N.J.S.A. 2A:14-1 was subject to the discovery rule in an action for wrongful detention of shares of stock; Gibbins v. Kosuga, 121 N.J. Super. 252 (Law Div. 1972), where plaintiff started suit nine years after closing title because a well was not on their property. See also McCoy Co., Inc. v. S.S. "Theomitor III", 133 N.J. Super. 308 (Law Div. 1975), Brown v. College of Medicine and Dentistry, 167 N.J. Super. 532, 536-537 (Law Div. 1979) and O'Keeffe v. Snyder, 83 N.J. 478 (1980), where the discovery rule was applied to an action for replevin of a painting under N.J.S.A. 2A:14-1.
This Court finds there is no legitimate reason to hold that the discovery rule is inapplicable to cases involving a Demand for Arbitration under a construction contract in the appropriate circumstances, in view of the expanding employment of the discovery rule. If "the discovery rule is essentially a rule of equity (and) ... equity lies at its genesis," Lopez, supra., 62 N.J. at 273 there is no reason not to apply it in cases involving construction and design when the allegation is that the damage or injury lay hidden for a period of time. It would be anomolous to hold that certain classes of plaintiffs are afforded the protection of the discovery rule while others are not when it is alleged the injury was not readily ascertainable. The discovery rule should be equally applicable to allegedly hidden construction and design effects as it is to the hidden wing nut in Mrs. Fernandi's abdomen. Therefore, the Court holds that the discovery rule is applicable to this case and could affect the calculation of the relevant period of limitations.
* * *
In order to determine if it will save Alexian Brothers' Demand for Arbitration we must carefully review material events and their dates:
*433 (1) On January 23, 1969 Alexian Brothers contracted with Oakley to prepare plans and specifications for construction;
(2) On November 25, 1970 Alexian Brothers contracted with Torcon to construct;
(3) On April 21, 1975 the Certificate of Substantial Completion was executed by Alexian Brothers and Torcon. (It is uncontroverted by the parties that the normal period of limitations would begin to run at this time. Therefore, unless the discovery rule or another legal theory, such as equitable estoppel, extends the period of limitations, Alexian Brothers would normally be barred from filing its Demand for Arbitration after April 21, 1981.)
It is equally uncontroverted that at or around April 21, 1975 Alexian Brothers had noticed it had difficulty with extensive water leaks and seepage in certain areas of construction. Water leaks about the windows were noticed practically every time it rained to the extent that some patients had to be removed from their rooms. These leaks were noted by Alexian Brothers' Brother Ruberg, the Chief Executive Officer at the time, even before April of 1975. Brother Ruberg assumed that the leaks were the "responsibility" of the Contractor. In fact, for a period of time Torcon individually and through its subcontractors demonstrated a willingness to return and correct some of these leaks, when advised about them by Alexian Brothers, and admittedly made visits to attempt repairs on the building leaks up through March of 1976.
Alexian Brothers admits that Brother Ruberg advised senior management in the spring of 1976 that "any defects found at the new wing should be brought to the attention of the general contractor for correction". Therefore, Alexian Brothers continued to demonstrate not only knowledge of problems with the construction but also had decided who was the responsible party to correct those problems.
Brother Ruberg had "overall responsibility (regarding) the project" for Alexian Brothers. During the construction he *434 formally toured the site at least once a week and informally viewed it practically everyday. He wrote to and had discussions with Torcon representatives in June 1975 concerning exterior water leaks in the Grassman Hall mens' toilet. In response Torcon expressed a willingness to repair. On October 23, 1975 he wrote to Torcon requesting the repair work be accomplished because "the problem is becoming more critical with each days (sic) delay."
Water leaks were not the only problems that existed since the building was accepted. Ruberg wrote Torcon in April 1977 noting "a severe crack developed in the staircase of the new tower early after completion of the project." Actually, Torcon had been contacted in March 1976 about cracks in the canopies at the main entrance, CCCU and the Emergency D & T Wing.
Alexian Brothers contends, however, that the cause of these leaks and the other problems was not known to it until after it engaged Universal Waterproofing in the spring of 1981 to inspect and repair the "leakage problems around the windows and certain other problems." In May 1981, Universal Waterproofing's principal noted masonary cracks. Rather than submit a bid to recaulk and reseal, he outlined a series of concerns he had in a letter to Alexian Brothers dated June 4, 1981, which he believed required fuller investigation.
Preservation Technology was subsequently retained and performed an in-depth inspection, including dismantling of brick and exposure of cavity walls, in the fall of 1981 which revealed, among other things: that the cavity wall was bigger than the specifications called for in some places; that debris was left in the cavity wall which disrupted the function of flashing; wall ties were informally fashioned and not standard; and relieving angles were missing. An additional investigation by a surveyor revealed the structural frame of the building was erected out of plumb. Based upon this investigation, Preservation Technology concluded that the water infiltration problem was caused by a *435 number of other problems that were hidden within the interior of the building's construction.
These conclusions were subsequently confirmed by the architectural firm of Perry, Dean, Stahl and Rogers in May 1982. Their work is not relevant to the issue of knowledge or notice, as Alexian Brothers clearly had impeccable knowledge in the fall of 1981 as to the totality of the problem and, in fact, Alexian Brothers filed its Demand for Arbitration in December 1981. The remaining question is, however, when did the period of limitations begin to run and did it begin to run before the fall of 1981.
As stated in Lynch v. Rubacky, 85 N.J. 65, 70 (1981), "the discovery rule centers upon an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person." This knowledge contemplates knowledge of injury and knowledge of fault. Clearly, Alexian Brothers was aware of injury even before the Certificate of Substantial Completion was filed when it knew it had leakage problems. Alexian Brothers became even more aware of the extent of the injury when it had to move patients from time to time from rooms during rainstorms.
Alexian Brothers also had knowledge and belief that the injury was attributable to the fault of Torcon, as it contacted the contractor before and after the execution of the Certificate of Substantial Completion to correct same. What Alexian Brothers claims it did not know, however, was the cause in fact of the problem, allegedly because the causes were hidden within the construction cavity.
The Court finds that once a party knows it has been injured and that said injury is the fault of another it has the requisite knowledge for the applicable period of limitations to commence running. No authority can be found that the injured party's knowledge must be impeccable or that the exact cause of the injury must be known. It is only the identity of the party causing injury and the fact of injury that must be known.
*436 Plaintiff need only have knowledge of "the existence of that state of facts which may equate in law with a cause of action." Burd v. New Jersey Telephone Co., 76 N.J. 284, 291 (1978). (Emphasis supplied). It is not necessary under the prevailing decisions that plaintiff have knowledge about the specific cause. All the cases refer to "a" cause of action or "an" actionable claim. It is not necessary that the injured party have knowledge of the extent of the injury before the statute begins to run. Rankin v. Sowinski, 119 N.J. Super. 393, 400 (App.Div. 1972); Burd v. New Jersey Telephone Co., supra, 76 N.J. at 292.
Practically speaking, if Alexian Brothers performed the investigation into its problems in 1975 that it performed in 1981 and 1982, knowing that the leaks were in existence in 1975, it would have discovered the same "hidden defects" well within the time to demand arbitration. Therefore, this Court finds that since Alexian Brothers knew that it had persistent leaks and extensive other problems in the new wing as a result of Torcon's construction in the summer of 1975, it knew it had been injured. There was only one entity that could be primarily responsible, the general contractor, Torcon.
It is axiomatic that we view statutes of limitations as one of repose. The purpose of such statutes "is to `stimulate to activity and punish negligence and promote repose by giving security and stability to human affairs'." O'Keeffe, supra, 83 N.J. at 491.
While we must reject the natural sympathy we may have for an injured party, there are other equitable considerations that come into play. Alexian Brothers states that it is entitled to have the Statute of Limitations tolled for the time period in which Torcon attempted to effect repairs and did so unsuccessfully. It relies on the doctrine of equitable estoppel. This doctrine has been defined as:
the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps *437 have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.... [Highway Trailer Co., v. Donna Motor Lines, Inc., 46 N.J. 442, 449, cert. den. sub nom. Mount Vernon Fire Insurance Co. v. Highway Trailer Co., 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966), quoting 3 Pomeroy's Equity Jurisprudence § 804 (5th ed. 1941).]
Conduct amounting to a misrepresentation or concealment of material facts, known to the party estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse is essential to a finding of equitable estoppel. See Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463, 474 (Ch.Div. 1961); Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979); Horsemen's Benevolent and Protective Association v. Atlantic City Racing Association, 98 N.J. 445, 456 (1985). In the present case Alexian Brothers has failed to demonstrate that either Torcon's attempted repairs amount to misrepresentations or that the full extent of the structural deficiencies were known to Torcon at the time it undertook to make the repairs.
Even if this Court were to find that Alexian Brothers was entitled to invoke the doctrine of equitable estoppel, this would not toll the running of the Statute of Limitations and its action would still be barred. It is well established that if, after the cessation of any basis for continued reliance by a plaintiff on the conduct of a defendant there remains a reasonable time under the applicable limitations period to commence a cause of action, the action will be barred if not filed within the remaining time. Mosior v. Ins. Co. of North America, 193 N.J. Super. 190, 197 (App.Div. 1984); Ochs v. Federal Ins. Co., 90 N.J. 108, 116-117 (1982); Evernham v. Selected Risks Ins. Co., 163 N.J. Super. 132, 137 (App.Div. 1978), certif. den. 79 N.J. 479 (1979). Torcon undertook its last repair in 1977. Therefore, Alexian Brothers had a period of approximately four years in which to bring the action within the applicable Statute of Limitations.
*438 Torcon's Motion for Summary Judgment is, therefore, granted, and Alexian Brothers is hereby enjoined from proceeding with the arbitration.