245 N.J. Super. 201 (1991)
584 A.2d 850
P.T. & L. CONSTRUCTION COMPANY, INC., PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
MADIGAN AND HYLAND, INC., MADIGAN-PRAEGAR, INC., AND U.R.S. COMPANY, INC., DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1990.
Decided January 10, 1991.
*203 Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.
Steven Backfisch argued the cause for appellants-cross-respondents (Whipple, Ross & Hirsh, attorneys; Paul J. Hirsh and Steven Backfisch, of counsel and on the brief).
Herbert C. Klein argued the cause for respondent-cross-appellant (Klein Chapman, attorneys; Herbert C. Klein and Leonard A. Peduto, of counsel; Catherine E. Brown, Leonard A. Peduto and Ellen J. Goldfinger, on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Following a bench trial, defendants Madigan and Hyland, Inc. (Madigan-Hyland), Madigan-Praegar, Inc. (Madigan-Praegar), and U.R.S. Company, Inc. (U.R.S.), appeal from an amended judgment of the Superior Court, Law Division, entered in favor of plaintiff P.T. & L. Construction Company, Inc. (P.T. & L.), in the amount of $818,885.74. On appeal, defendants contend that the trial judge improperly failed to apply the six-year statute of limitations to bar P.T. & L.'s claim and that P.T. & L.'s claim is barred by the doctrine of collateral estoppel.
P.T. & L. originally filed suit in 1979 against the New Jersey Department of Transportation (DOT),[1] alleging misrepresentation in a contract which it had been awarded, in conjunction with another company, to construct a 1.4 mile segment of Route 78 in Union Township, known as Section 5AC. Complications developed because the site plans prepared by defendant Madigan-Hyland and given to P.T. & L. by the State were based on soil conditions which differed from those actually existing. Apparently, the U.S. Army Corps of Engineers had planned a project to alleviate the drainage problems in the area. The project, however, never commenced. The design produced by *204 Madigan-Hyland was, nevertheless, based on the assumption that the project would be completed and that the area would drain properly. Consequently, the construction of Section 5AC was severely hampered.
P.T. & L.'s 1979 suit against the DOT alleged that the State's nondisclosure of material facts concerning working conditions on Section 5AC constituted misrepresentation. P.T. & L. prevailed at the trial court and was awarded $1,484,629. The Appellate Division reduced this award by $240,768. The reduced award was affirmed by the Supreme Court. P.T. & L. Constr. Co. v. Department of Transp., 108 N.J. 539, 531 A.2d 1330 (1987).
On March 5, 1981, P.T. & L. sued defendant Madigan-Hyland, seeking, inter alia, (1) ownership costs for equipment remaining idle during the construction delay and (2) prejudgment interest from Madigan-Hyland on the award P.T. & L. had recovered from the DOT. The prejudgment interest was evidently sought because the New Jersey Contractual Liability Act, N.J.S.A. 59:13-8, prohibits the awarding of prejudgment interest against the DOT. The court granted P.T. & L.'s motion to amend the complaint to add Madigan-Praegar and U.R.S. as defendants.
For the next six years, while P.T. & L.'s suit against the State was being appealed, the present case was placed on the inactive list in Bergen County. The court later denied Madigan-Hyland's motion for summary judgment which was made on the grounds that P.T. & L.'s claim was barred by the six-year statute of limitations and that P.T. & L., having successfully sued the State, was collaterally estopped from suing Madigan-Hyland.
Thereafter, the case was bifurcated and tried before Judge Sciuto, who, on December 23, 1988, found 100% liability against Madigan-Hyland. On May 4, 1989, the court entered judgment against Madigan-Hyland in the amount of $791,925.74 on the basis of $219,892.07 for ownership costs for idle equipment; *205 $51,947.00 for roadway excavation costs not recovered from the State in the earlier action; $217,471.67 for prejudgment interest on these items; and $302,615.00 for prejudgment interest on P.T. & L.'s award in its suit against the DOT. The prejudgment interest on the first two items was later amended by the trial court to $244,431.67, thereby constituting a total of $818,885.74. Madigan-Hyland now appeals, alleging, inter alia, that the trial court failed to apply the six-year statute of limitations. P.T. & L. cross-appeals, contending the trial court's award of prejudgment interest was inadequate.
The record reveals repeated problems on this project from the very beginning of construction. Work commenced November 8, 1972. Three days were allocated under the contract for "stripping" the affected area, i.e., removing surface vegetation and topsoil to a depth of 18 inches. Apparently, the three-day allocation was based on the assumption that the area was dry. However, the "wet conditions" found thereon required "wet excavation" techniques of almost six months in duration.
On January 10, 1973, P.T. & L.'s job-site superintendent, Harry Harper, wrote to John Akin, the DOT's chief highway engineer, and advised him that "normal stripping and filling methods" could not be applied. P.T. & L.'s president, Nicholas Laganella, testified that he personally observed this problem and that a problem of this nature is not taken lightly by the company and is discussed among various employees. On February 1, 1973, P.T. & L.'s chief engineer, Thomas Hohtanz, wrote to Akin and noted that "serious consideration should be given to redesign of the drainage system" in a certain area. Hohtanz wrote to Akin on February 9, 1973, and requested additional time to complete the project because of wet conditions. On February 12, 1973, Laganella wrote to Akin, stating: "[W]e insist that this project has been improperly designed. Whether this condition existed prior to Letting of Contract, is not the paramount issue. Whether a road can be constructed as it has been designed is the issue, and we, without reservation say that it can not [sic]." Id. (emphasis supplied). On *206 April 4, 1973, Akin responded to Laganella and Hohtanz, stating: "The drainage as designed is correct. This design is based on the proposed lowering of the East Branch of the Rahway River by others .... no changes in the contract are being made as the results [sic] of this investigation and therefore no extension of time is being processed." Id.[2] (emphasis in original). Laganella responded on April 11, 1973, noting that P.T. & L. still ha[d] serious questions as to the drainage and design."
Subsequently, letters were exchanged between P.T. & L. and the DOT whereby P.T. & L. continued to request that the DOT pay additional monies because of the extra work caused by the wet conditions. On April 22, 1977, the DOT issued a written rejection of P.T. & L.'s request for a change order seeking additional compensation and an extension of time based on design deficiencies and misrepresentation. The trial court held that the six-year statute of limitations did not begin running until the DOT's written rejection was issued on April 22, 1977.
N.J.S.A. 2A:14-1 provides, in part: "Every action at law ... for any tortious injury to the rights of another ... shall be commenced within 6 years next after the cause of any such action shall have accrued."
Statutes of limitations are designed to stimulate litigants to prosecute their causes diligently and "to spare the courts from litigation of stale claims. Farrell v. Votator Div. of Chemtron Corp., 62 N.J. 111, 115, 299 A.2d 394 (1973); Rosenau v. City of New Brunswick, 51 N.J. 130, 136, 238 A.2d 169 (1968). They penalize dilatoriness and serve as measures of repose. Id. at 136-37, 238 A.2d 169 (quoting Wood v. Carpenter, 101 U.S. 135, 139, 25 L.Ed. 807, 808 (1879)).
*207 The general rule postpones the accrual of a cause of action until P.T. & L. "learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action." Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 426, 527 A.2d 66 (1987); Burd v. New Jersey Tel. Co., 76 N.J. 284, 291, 386 A.2d 1310 (1978).
A cause of action grounded in tort accrues, not when the tortious act occurs, but when the consequential injury or the damage occurs. Diamond v. New Jersey Bell Tel. Co., 51 N.J. 594, 596, 242 A.2d 622 (1968); Rosenau v. City of New Brunswick, supra, 51 N.J. at 138, 238 A.2d 169; Burd v. New Jersey Tel. Co., 149 N.J. Super. 20, 30, 372 A.2d 1355 (App.Div. 1977), aff'd, 76 N.J. 284, 386 A.2d 1310 (1978); Hermes v. Staiano, 181 N.J. Super. 424, 429, 437 A.2d 925 (Law Div. 1981). Thus, when a plaintiff knows or has reason to know that it has a cause of action against an identifiable defendant and voluntarily sleeps on its rights so long as to permit the customary period of limitations to expire, the pertinent considerations of repose, coincide to bar its action. Where, however, a plaintiff does not know or have reason to know that he has a cause of action against an identifiable defendant until after the normal period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play. Farrell v. Votator Div. of Chemtron Corp., supra, 62 N.J. at 115, 299 A.2d 394; Fernandi v. Strully, 35 N.J. 434, 438, 173 A.2d 277 (1961).
The record clearly shows that by February 1973, P.T. & L. was aware that it had a cause of action against identifiable defendants, both the DOT and Madigan-Hyland. Madigan-Hyland was the designer of the project. Its name appeared on each page of the construction drawings. Indeed, P.T. & L. admits in its brief that "[i]n 1973, P.T. & L. was aware that there were design problems affecting the work on the [p]roject and that [Madigan-Hyland] was the design engineer." In *208 addition, P.T. & L.'s counsel stated at trial that prior to bidding on the contract, P.T. & L.'s various officers inspected everything available to them in connection with the project, including the drawings. Thus, P.T. & L. was aware of the identity of the preparer of the construction drawings even before it bid on the project.
P.T. & L.'s awareness is clearly borne out by the plethora of letters from P.T. & L. to the DOT. The letters also show that the consequential damage to P.T. & L. had already occurred, i.e., P.T. & L. had been injured by having to spend much more time and money to complete the work than was agreed to in the written contract. Therefore, P.T. & L. should have diligently filed suit and proceeded with discovery so as to ascertain all known and unknown defendants. Included in this group were both the State and Madigan-Hyland. If P.T. & L. intended to file a suit against either of them, it should have been done within six years of February 1973. The suit against the State was filed in 1979, within the six-year statute of limitations. However, the suit in question here was not filed until March 5, 1981, over eight years after P.T. & L. repeatedly complained about the unexpected wet conditions due to the alleged improper design and nearly eight years after the DOT, subsequent to investigating P.T. & L.'s allegations about design errors, concluded that the design was correct and that no changes would be made to the contract.[3]
P.T. & L. argues that the statute of limitations was tolled until 1977 when it was damaged by the DOT's rejection *209 of its application for additional monies for completion of the project. However, the general rule is that in order for the pendency of other proceedings to toll the statute of limitations on a cause of action, the proceedings must be such as to prevent enforcement of the remedy by action. W.V. Pangborne & Co. v. Department of Transp., 116 N.J. 543, 556-57, 562 A.2d 222 (1989); Nix v. Spector Freight Sys., Inc., 62 N.J. Super. 213, 223, 162 A.2d 590 (App.Div. 1960).
In this case, nothing prevented P.T. & L. from filing suit against Madigan-Hyland in 1973, when it knew that the project was improperly designed and that Madigan-Hyland had drawn the designs. Moreover, once a party knows that it has been injured and that the injury is the fault of another, it has the requisite knowledge for the applicable period of limitations to commence running. Torcon, Inc. v. Alexian Bros. Hosp., 205 N.J. Super. 428, 435, 501 A.2d 182 (Ch. 1985), aff'd, 209 N.J. Super. 239, 507 A.2d 289 (App.Div.), certif. denied, 104 N.J. 440, 517 A.2d 431 (1986). There is no need for the injured party's knowledge to be impeccable or the exact cause of injury to be known. Torcon, Inc. v. Alexian Bros. Hosp., supra, 205 N.J. Super. at 435, 501 A.2d 182. Thus, it is not necessary that the injured party have knowledge of the extent of the injury before the statute begins to run. Burd v. New Jersey Tel. Co., 76 N.J. 284, 292, 386 A.2d 1310 (1978); Rankin v. Sowinski, 119 N.J. Super. 393, 400, 291 A.2d 849 (App.Div. 1972); Torcon, Inc. v. Alexian Bros. Hosp., supra, 205 N.J. Super. at 436, 501 A.2d 182. Consequently, P.T. & L.'s assertion that the statute began to run in 1977 after the DOT refused to grant it additional monies is not viable. This suit is therefore barred by the six-year statute of limitations and the damage award was improper.
In bottoming our decision on the statute of limitations bar, P.T. & L.'s cross-appeal is moot and we need not deal with the other points raised by Madigan-Hyland that P.T. & L.'s claim is barred by collateral estoppel; that the damage award received *210 by P.T. & L. should be reduced; and that interest should be suspended while this case was on the inactive list. However, we have serious questions concerning the quantity of the damages asserted by P.T. & L.
Reversed.
NOTES
[1] We refer to the "DOT" and "State" interchangeably, both referring to the New Jersey Department of Transportation.
[2] The record indicates that the DOT may also have responded on January 19, 1973, and February 7, 1973, but copies of those letters were not included in the record.
[3] P.T. & L. has not urged that a 1980 change in the law was the reason that it waited until 1981 to file suit. See Conforti & Eisele v. John C. Morris Assocs., 175 N.J. Super. 341, 418 A.2d 1290 (Law Div. 1980), aff'd, 199 N.J. Super. 498, 489 A.2d 1233 (App.Div. 1985) (allowing a contractor to sue a design engineer in tort for economic injury despite the absence of privity of contract). To the extent Conforti & Eisele may have changed the law, we do not believe this mitigates P.T. & L's decision not to promptly sue Madigan-Hyland. As we stated above, if P.T. & L. intended to sue Madigan-Hyland, it should have instituted a cause of action within the statutory six-year period from this time.