711 A.2d 1385

MARVIN AND BARBARA STRAUSS, ET AL. PLAINTIFFS, v. TOWNSHIP OF HOLMDEL, A MUNICIPAL CORPORATION, TOWNSHIP COMMITTEE OF HOLMDEL, DEFENDANTS.

Superior Court of New Jersey
Law Division
Monmouth County

Decided December 18, 1997.

612

614

*Peter L. Davidson,* for plaintiff (*Mandelbaum & Mandelbaum, P.C.*).

*Edward C. Eastman, Jr.* for defendants (*Lomurro, Davison, Eastman & Munoz, P.A.*).

LOCASCIO, J.S.C.

The issues presented by this case are (1) whether a municipality's levy of a special assessment, to offset the cost of the installation of sewer lines within a development, violates the constitutional rights of residents of the development, and (2) whether a municipality can be liable for negligently permitting the construction of a subdivision without sewers.

Plaintiffs represent approximately 137 property owners who reside in two separate subdivisions, the Estates of Holmdel and the Hills of Holmdel, which were approved for construction in sections in 1963, 1965, 1970 and 1972. Because there were no sewer trunk lines available, nor any plans to install trunk lines in the vicinity, the developers were not required to install sewer lines as a condition of approval, and therefore the houses were built with septic tanks.

Late in 1989, the septic systems began experiencing such serious failures that neither the repair, nor the reconstruction, of the

systems was practicable. Because a nearby trunkline was, by then, under construction, making the installation of sewer lines into the Estates of Holmdel and the Hills of Holmdel feasible, defendant Holmdel Township decided, in June 1990, to extend the sewer lines into these developments.

On October 22, 1990, a sewer assessment ordinance, providing for the construction of sewer lines into the subdivisions, was introduced by defendant's township committee; a public hearing on the ordinance was held on November 26, 1990. After the ordinance's unchallenged adoption, bonds were sold to finance the project. A bonding ordinance was passed on December 17, 1990, and published on December 20, 1990, which provided for the issuance of $4,100,000 in bonds and, in order to offset a portion of the sewer installations costs, directed the levy of a special assessment on plaintiffs' properties, in accordance with the sewers' resultant increase in the value of each lot. Any amounts not paid, by those lot owners who received the benefit, would be paid by the township.

The installation of the sewer lines was completed in July, 1993 at a total cost of $2,755,986.00. Pursuant to *N.J.S.A.* §§ 40:56–1–89, a Sewer Assessment Commission was established which, after an investigation, which included a real estate appraisal, site visits, and consideration of comments made at a May 17, 1995 public hearing, concluded that this improvement resulted in a benefit of $14,700 per lot. The Commission's report was confirmed by a resolution of the township committee on September 11, 1995.[1] Plaintiffs filed their amended complaint, challenging this assessment, on October 11, 1995. Defendants now move for summary judgment as to count I, alleging equal protection violations, and count II, alleging negligence.

---

[1] Ultimately, the residents of the Estates of Holmdel and the Hills of Holmdel contributed $2,013,900 of the total cost of the sewer installation project, and the township absorbed the balance of $742,086. Had the township not absorbed this balance, the cost to the homeowners would have amounted to approximately $20,116 per lot.

## I

The first issue to be decided is whether defendant township's levying of a special assessment violates plaintiffs' equal protection rights provided by the United States Constitution and the New Jersey Constitution.

The Equal Protection Clause of the United States Constitution, made applicable to the states by the Fourteenth Amendment to the United States Constitution, requires "all persons similarly situated be treated alike and that no State ... shall deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend.* XIV, § 1; *See also, City of Cleburne, Texas v. Cleburne Living Center,* 473 *U.S.* 432, 439, 105 *S.Ct.* 3249, 3254, 87 *L.Ed.*2d 313, (1985); *Plyler v. Doe,* 457 *U.S.* 202, 216, 102 *S.Ct.* 2382, 2394, 72 *L.Ed.*2d 786 (1982); *F.S. Royster Guano Co. v. Virginia,* 253 *U.S.* 412, 415, 40 *S.Ct.* 560, 561, 64 *L.Ed.* 989 (1920). In *Chester Borough v. World Challenge,* 14 *N.J.Tax* 20, 29 (Tax Ct.1994), the court enumerated the tests used to determine whether there is a violation of the Equal Protection Clause:

> To analyze whether or not a classification violates the Equal Protection Clause [of the Unites States Constitution], three different tests have evolved; the "rational basis" test which is a general test; the "governmental objectives" test which is an intermediate [level scrutiny] test and, the "strict scrutiny" test which is applied to legislation that operates to the disadvantage of a "suspect class" or impinges upon a fundamental constitutional right.

The Equal Protection Clause was intended to restrict state legislative action inconsistent with fundamental constitutional principles. Accordingly, the Court has found that classifications that disadvantage a suspect class, or impinge upon a fundamental right, are to be treated as presumptively invidious." *Plyler, supra,* 457 *U.S.* at 216–17, 102 *S.Ct.* at 2394–95, 72 *L.Ed.*2d 786. Regulation of a fundamental right, or treatment of a suspect class, is subject to strict scrutiny, *i.e.* it must further a compelling state interest and there must be no less restrictive means to accomplish that goal. *Regents of the University of California v. Bakke,* 438 *U.S.* 265, 357, 98 *S.Ct.* 2733, 2782, 57 *L.Ed.*2d 750 (1978). Regulation which involves a semi-suspect class, *i.e.* which indirectly

affects a fundamental right, is subject to an intermediate level of scrutiny which must further an important governmental interest and be substantially related to the achievement of that objective. *See generally, Plyler v. Doe, supra,* 457 *U.S.* at 217, 102 *S.Ct.* at 2394, 72 *L.Ed.*2d 786.

Plaintiffs conceded, at oral argument, that they do not fall within a suspect class (e.g. race or religion), nor a semi-suspect class (i.e. involving a fundamental right), and therefore do not qualify for consideration under either the "strict scrutiny" or "intermediate scrutiny" standards. However, plaintiffs contend that defendant's conduct fails to meet the "rational basis" standard which, in order to withstand constitutional attack, requires the regulation to be rationally related to a legitimate governmental objective. *See Massachusetts Bd., of Retirement v. Murgia,* 427 *U.S.* 307, 312, 96 *S.Ct.* 2562, 2566, 49 *L.Ed.*2d 520 (1976); *Drew Associates of New Jersey, L.P. v. Travisano,* 122 *N.J.* 249, 258-59, 584 *A.*2d 807 (1991). The rational basis test requires that the regulation (1) not be arbitrary or capricious and (2) have a rational basis in relation to the specific objective to be obtained. *New Jersey Restaurant Association v. Holderman,* 24 *N.J.* 295, 300, 131 *A.*2d 773 (1957). *See Nordlinger v. Hahn,* 505 *U.S.* 1, 11, 112 *S.Ct.* 2326, 2332, 120 *L.Ed.*2d 1 (1992)(holding that the Equal Protection Clause is generally satisfied "so long as there is a plausible policy reason for the classification"). Generally, economic regulations are subject to the rational basis test. *See Williamson v. Lee Optical of Oklahoma,* 348 *U.S.* 483, 488, 75 *S.Ct.* 461, 464, 99 *L.Ed.* 563 (1955) *reh'g denied,* 349 *U.S.* 925, 75 *S.Ct.* 657, 99 *L.Ed.* 1256 (1955).

When a municipality addresses an issue, it must invariably draw lines and make choices which create some inequity to those included or excluded. *New Jersey State League of Municipalities v. State,* 257 *N.J.Super.* 509, 519, 608 *A.*2d 965 (App.Div. 1992). However, so long as the "bounds of reasonable choice" are not exceeded, the courts must defer to a municipality's judgment. *Taxpayers Association of Weymouth Township v. Weymouth*

*Township*, 80 *N.J.* 6, 40, 364 *A.*2d 1016 (1976), *appeal dismissed and cert. denied*, 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977); *League of Municipalities, supra*, 257 *N.J.Super.* at 519, 608 *A.*2d 965. A municipality's classification must be sustained if it can be justified on any reasonably conceivable set of facts. *McGowan v. Maryland*, 366 *U.S.* 420, 426, 81 *S.Ct.* 1101, 1105, 6 *L.Ed.*2d 393 (1961). "It does not matter that the classification may be mathematically imperfect or that it results in inequities in practice." *Taxpayers Association of Weymouth Township, supra*, 80 *N.J.* at 40, 364 *A.*2d 1016; *Dandridge v. Williams*, 397 *U.S.* 471, 485, 90 *S.Ct.* 1153, 1161, 25 *L.Ed.*2d 491 (1970), *reh'g denied*, 398 *U.S.* 914, 90 *S.Ct.* 1684, 26 *L.Ed.*2d 80 (1970). The court must only determine whether or not there is a reasonable basis for the township's choice and not substitute its own judgment for that of the township committee's. *Drew Associates of New Jersey, L.P. v. Travisano*, 122 *N.J.* 249, 260, 584 *A.*2d 807 (1991).

In analyzing an equal protection challenge, brought under the United States Constitution, the Court, in *David v. Vesta Co.*, 45 *N.J.* 301, 314–315, 212 *A.*2d 345 (1965), observed that:

> The equal protection clause of the Fourteenth Amendment does not deprive the State of the power to classify in the adoption of police laws, but allows wide discretion, precluding only that done without any reasonable basis and therefore purely arbitrary. The constitutionality of a legislative classification is presumed, and one who assails the classification must carry the burden of showing its arbitrariness. A classification having some reasonable basis is not invalid merely because if is not made with mathematical nicety or because in practice it results in some inequality. And the classification must be upheld if any set of facts can reasonably be conceived to support it. In short, the equal protection clause forbids only invidious discrimination.

Furthermore, a municipal ordinance, like all legislation, is entitled to a strong presumption of constitutionality. *Pleasure Bay Apartments v. City of Long Branch*, 66 *N.J.* 79, 93–94, 328 *A.*2d 593 (1974); *Property Owners and Managers Association v. Mayor and Town Council of Parsippany–Troy Hills*, 264 *N.J.Super.* 538, 544, 624 *A.*2d 1381 (App.Div.1993). "The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trial of failure." *Id., citing,*

*N.J. Restaurant Assn. v. Holderman,* 24 *N.J.* 295, 300, 131 *A.*2d 773 (1957).

When conducting an equal protection analysis under Article 1, Paragraph 1 of the New Jersey Constitution, the Court has employed a balancing test, which requires the Court to consider (1) the nature of the affected right, (2) the extent to which the governmental restrictions intrude upon it, and (3) the public need for the restriction. *Brown v. City of Newark,* 113 *N.J.* 565, 573, 552 *A.*2d 125 (1989); *See also, Barone v. Dep't of Human Services,* 107 *N.J.* 355, 368, 526 *A.*2d 1055 (1987). Under New Jersey's balancing test, the crucial issue is "whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Borough of Collingswood v. Ringgold,* 66 *N.J.* 350, 370, 331 *A.*2d 262 (1975), *appeal dismissed,* 426 *U.S.* 901, 96 *S.Ct.* 2220, 48 *L.Ed.*2d 826 (1976). "Although stated differently, an equal protection analysis of rights under Article 1, Paragraph 1 of the New Jersey Constitution, like an analysis of equal protection and due process under the Fourteenth Amendment of the United States Constitution, may lead to the same results." *Brown, supra,* 113 *N.J.* at 574, 552 *A.*2d 125.

In the instant action, an analysis of the Equal Protection Clause of the United States Constitution and of the New Jersey Constitution yields the same result. A governmental entity may levy special assessments against properties which will benefit from a local improvement, including "the construction ... of a sewer or drain in, under or along a street, alley or public highway, or portion thereof, or in, under or along any public or private lands." *N.J.S.A.* 40:56–1. Here, plaintiffs concede that, because the sewer lines increased the value of each home in question, their installation constitutes an improvement and not a service.

It is well-settled that the decision of whether particular improvements should be undertaken as a general improvement, for which the whole township would pay, or a local improvement, for which the specifically benefited property owners will pay to the extent they will be benefited, rests within the sound

discretion of the municipality. *McQueen, et al. v. Town of West New York*, 56 *N.J.* 18, 26, 264 *A.*2d 210 (1970); *Hoglund v. City of Summit*, 28 *N.J.* 540, 147 *A.*2d 521 (1959). Furthermore, that decision will not be upset "in the absence of fraud or palpable abuse of discretion," *Hoglund, supra*, 28 *N.J.* at 552, 147 *A.*2d 521, i.e. unless it is arbitrary or capricious, which the court, in *D'Atria v. D'Atria*, 242 *N.J.Super.* 392, 401, 576 *A.*2d 957 (Ch.Div.1990), described as follows:

> The arbitrary or capricious standard calls for a less searching inquiry than other formulas relating to the scope of review. Although it is an overstatement to say that a decision is not arbitrary, capricious or unreasonable whenever a Court can review the reasons stated for the decision without a loud guffaw or involuntary gasp, it is not much of an overstatement. The arbitrary, capricious or unreasonable standard is the least demanding form of judicial review.

Plaintiffs contend that the township's decision to levy a special assessment was arbitrary and capricious because the facts of this case are indistinguishable from previous situations where the township paid for sewers out of general funds. However, important distinctions exist between the Estates of Holmdel and Hills of Holmdel and the three other projects which the township financed.

The first of these three projects, Old Mannor and Newstead, were sewered in the 1960's, at a time when the township was not facing the growing population and anticipated sewer costs it is facing today. The second of these three projects, located on Alloco Drive, was a relatively simple, single street project, costing approximately $120,000, which did not require the construction of a pump station because the nearest trunk line was located down-hill from the development. In addition, at the time that the Alloco Drive project was approved, the township was in a period of intense development, so a developers' connection fees and additional user fees, were generally sufficient to cover the costs of the sewers. The North Beers Street project, the third financed by the township, which cost only $100,000, was, like the two other projects, much less complex than the Estates of Holmdel and Hills of Holmdel. Conversely, the Estates of Holmdel and the Hills of Holmdel are characterized by numerous very hilly streets, rolling

terrain, streams, flood plains, steep slopes, and wetlands. While other areas in the township may have some of these characteristics, they generally do not have the severe changes in topography which typify the Estates of Holmdel and the Hills of Holmdel. These distinctions in size and topography are what make a sewer system in the Hills of Holmdel and the Estates of Holmdel more complex and more expensive than the other projects financed by the township.

Plaintiffs also argue that they are being treated differently than those residents who live in developments where the developers were required to install sewers as a condition for approval. However, in all likelihood, the cost of installing those sewers was passed on to the residents of those developments in the purchase price of their homes. Therefore, the residents of those other developments have paid for their sewers in much the same way that the residents of the Estates of Holmdel and the Hills of Holmdel, by virtue of defendant's sewer assessment, have paid for theirs.

The township contends that it was looking toward the future when it decided to levy a special assessment upon plaintiffs. Because a large portion of the township is still unsewered, if the township now sets a precedent by absorbing a large portion of the sewer costs, it will be using township tax monies to install sewer systems in various different neighborhoods. The township's only option, in paying for future sewers, is to increase taxes and sewer rates, or levy special assessments. To increase taxes and sewer rates for the entire town, in order to benefit only one certain group of citizens, would not be fiscally responsible to the remaining portions of the township. Plaintiffs are seeking to have all the residents of the township pay for a sewer system which benefits only them. This is unfair to the other taxpayers of the township. The township has a duty to be fiscally responsible to all its citizens. *See, N.J.S.A.* 40:48–2.

For the aforesaid reasons this court concludes that (1) because sewer lines were not readily available to this section of the

township when the subdivisions were originally constructed, the township had a rational basis for not requiring the developer to install sewer lines, and (2) because of the complexity and the higher costs associated with now constructing sewers in the subdivisions, a rational basis exists for the township's decision to levy a special assessment against those directly benefited by the sewers. Because plaintiffs have not demonstrated facts sufficient to overcome the presumption of constitutionality, these decisions of defendant Holmdel are neither arbitrary nor capricious.

Therefore, this court finds that the township has not violated plaintiffs' equal protection rights provided by the United States and New Jersey constitutions. Accordingly, defendant township's motion for summary judgment on count I is granted.

## II

In count II of their complaint, plaintiffs allege that the township negligently breached a duty, owed to plaintiffs, by not requiring the installation of sewer lines when the subdivision was approved, which breach caused them damage to the extent of the special assessment levy. The township contends that this claim is barred by the relevant statute of limitations, *N.J.S.A.* 59:8–8, and by the immunities provided by the *New Jersey Tort Claims Act, N.J.S.A.* 59:2-1-10.

### The Statute of Limitations

Plaintiffs allege that the township's decision not to require the installation of the sewer lines, when the development was approved, was a negligent act which caused their damages. Because defendant is a governmental entity, this action is governed by the two year statute of limitations of the *New Jersey Tort Claims Act. N.J.S.A.* 59:8–8.

This court's inquiry must begin with a determination of when plaintiff's cause of action accrued. The township contends that the cause of action accrued over thirty years ago when the township initially decided not to require the installation of sewer

lines; plaintiffs argue that the date that the sewer assessment was confirmed triggers the statute of limitations.

Although a tortious cause of action accrues not when the tort occurs, but when consequential injury or damages occur, it is not necessary that the injured party have knowledge of the extent of the injury before the applicable statute of limitations begins to run. *PT & L Construction v. Madigan & Hyland,* 245 *N.J.Super.* 201, 207, 584 *A.*2d 850 (App.Div.1991). All the potential claimant needs to know is that the fault of another has caused injury or damage to the claimant. *Molnar v. Hedden,* 138 *N.J.* 96, 102–103, 649 *A.*2d 71 (1994). While a plaintiff must be aware of material facts relating to the existence and origin of an injury, he need not have a comprehension of the legal significance of such facts. *Grunwald v. Bronkesh,* 131 *N.J.* 483, 493, 621 *A.*2d 459 (1993); *Lynch v. Rubacky,* 85 *N.J.* 65, 73, 424 *A.*2d 1169 (1981). Additionally, New Jersey's discovery rule provides that the accrual of a cause of action is delayed until an injured party discovers, or should have discovered by the exercise of reasonable diligence and intelligence, that an actionable claim exists. *Lopez v. Swyer,* 62 *N.J.* 267, 273, 300 *A.*2d 563 (1973). *See Diamond v. N.J. Bell Telephone Co.,* 51 *N.J.* 594, 242 *A.*2d 622 (1968)(holding that when plaintiffs did not discover that defendant's installation of a conduit had apparently damaged their sewer line until nine years after the event, the statute of limitations did not start to run until the harm to plaintiffs became reasonably apparent or ascertainable); *see also, Vispisiano v. Ashland Chemical Company,* 107 *N.J.* 416, 419, 527 *A.*2d 66 (1987); *Terrace Condominium Association v. Midlantic National Bank,* 268 *N.J.Super.* 488, 502, 633 *A.*2d 1060 (Law Div.1993).

This court concludes that damages to the plaintiff property owners became reasonably apparent and ascertainable on the date the sewer assessments were confirmed. Prior to that date, plaintiffs had no damages. *See PT & L Construction, supra,* 245 *N.J.Super.* at 207, 584 *A.*2d 850; *see also, Burd v. N.J. Telephone Company,* 149 *N.J.Super.* 20, 30, 372 *A.*2d 1355 (App.Div.1977).

Although the bonding ordinance was passed on December 17, 1990, and published on December 20, 1990, it was not until September 11, 1995 that the properties were actually assessed. Although prior to September 11, 1995, plaintiffs may have been aware that, if they continued to reside in these developments, an assessment might, at some time in the future, be levied against them, they were not aware of when or the amount thereof. Therefore, it was not until September 11, 1995, the date plaintiffs became aware of the actual amount of their damages, that the negligence cause of action accrued. According, plaintiff's complaint, filed October 11, 1995, is not barred by the statute of limitations.

## The New Jersey Tort Claims Act

Because count II alleges that the Holmdel Township Planning Board negligently permitted the developments to be constructed without sewers, and that the Holmdel Township Board of Health negligently approved septic tanks, this count is governed by *New Jersey's Tort Claims Act.*[2] For an action to be timely under the *Tort Claims Act,* a claimant must (1) file a notice of claim within ninety days of the accrual of the cause of action, (2) allow six months to elapse from the date notice is received before filing a complaint, and (3) file that complaint within two years from the accrual of the cause of action. *N.J.S.A.* 59:8-8.

For the reasons set forth above, this court has determined that plaintiffs' negligence cause of action accrued on September 11, 1995. Plaintiffs filed an amended complaint on October 11, 1995. Not only have plaintiffs failed to comply with the notice of claim requirements of the *Tort Claims Act,* plaintiffs have failed to wait the requisite six months before filing the complaint. Assum-

---

[2] Although the Holmdel Township Planning Board and Holmdel Township Board of Health are not named as defendants, rather than decide their respective liability on procedural grounds, this court will decide the issue on the merits, assuming that the complaint could be amended to add these parties as defendants.

ing, *arguendo,* that plaintiffs' complaint, filed on October 11, 1995, is sufficient to constitute a notice of claim, the earliest date on which plaintiffs could validly file a complaint would have been April 11, 1996. Therefore, defendant's motion for summary judgment, as to count II of plaintiffs' complaint, could be granted, procedurally, because of plaintiffs' failure to meet the notice and filing requirements of the *Tort Claims Act.* However, in addition, the immunities provided by the *Tort Claims Act,* substantively, preclude plaintiffs from recovering under count II.

■ Pursuant to *N.J.S.A.* 59:2–3, "(a) a public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity; (b) a public entity is not liable for legislative or judicial action or inaction or administrative action or inaction of a legislative or judicial nature." The treatment of discretionary activities under the *New Jersey Tort Claims Act* was intended to correspond with the broad immunity furnished by the *Federal Tort Claims Act.* 28 *U.S.C.* § 2671 (1994); *Cobb v. Waddington,* 154 *N.J.Super.* 11, 380 *A.*2d 1145 (App.Div.1977); *cert. denied,* 76 *N.J.* 235, 386 *A.*2d 859 (1978). Determining whether governmental action is discretionary for the purposes of the *Tort Claims Act* generally depends upon whether the decision is a high level policy decision. *Costa v. Josey,* 83 *N.J.* 49, 415 *A.*2d 337 (1980). Generally "high level policy decisions classified as discretionary acts involve planning, and are distinct from ministerial acts, which pertain merely to operations and which are not immunized." *Dix Bros. v. State,* 182 *N.J.Super.* 268, 271, 440 *A.*2d 484 (Law Div.1981).

■ The decisions of the Holmdel Township Planning Board not to require the installation of a sewer system, and of the Holmdel Township Board of Health to permit septic tanks, in the Hills of Holmdel and the Estates of Holmdel, were quasi-judicial decisions based upon the very nature of such boards. Planning boards are independent administrative bodies which act in a quasi-judicial manner. *Dallmeyer v. Lacey Township Board of Adjustment,* 219 *N.J.Super.* 134, 138, 529 *A.*2d 1063 (Law Div.1987); *see*

*also, Dolan v. DeCapua*, 16 *N.J.* 599, 612, 109 *A.*2d 615 (1954). "[D]ecisions of this type have been immunized, recognizing that public employees . . . frequently engage in a wide range of discretionary decision-making, not all of which could be anticipated but which often affect, and possibly disgruntle, vast numbers of people." *Delbridge v. Schaeffer*, 238 *N.J.Super.* 323, 351, 569 *A.*2d 872 (Law Div.1989). Additionally, damage claims against planning boards would negatively influence planning decisions and impact the "carefully constructed cloak of independence" achieved by the quasi-judicial nature of zoning and planning boards. *Burlington Assembly of God v. Zoning Board*, 247 *N.J.Super.* 285, 291, 588 *A.*2d 1297 (Law Div.1990). That is, "[i]t cannot be a tort for government to govern." *Amelchenko v. Freehold Borough*, 42 *N.J.* 541, 550, 201 *A.*2d 726 (1964).

A ministerial act has been defined as "[o]ne which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or ◄ the exercise of his own judgment upon the propriety of the act being done." *Morey v. Palmer*, 232 *N.J.Super.* 144, 151, 556 *A.*2d 811 (App.Div.1989). Because planning boards and boards of health do not simply perform in a given manner without the exercise of their own judgment, their actions cannot be deemed ministerial. While it is true that once certain facts have been established, the planning board is mandated to act in a certain way, the board uses discretion in weighing the credibility of witnesses and evidence presented when making findings of fact.

*N.J.S.A.* 59:2–5 recognizes that the decisions of planning boards and boards of health, to issue permits or authorize subdivisions, are the types which should be afforded immunity:

> A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

Furthermore:

> This immunity is necessitated by the almost unlimited exposure to which public entities would otherwise be subject if they were liable for the numerous occasions

which they issue, deny or suspend permits and licenses. In addition, most actions of this type by a public entity can be challenged though an existing administrative or judicial review process. *Tyrell v. Burke,* 110 *N.J.L.* 225, 164 *A.* 586 (E. & A.1933).

*See Comment, N.J.S.A.* 59:2–5. This statute has been interpreted to grant immunity to all phases of the licensing function, whether or not the act was classified as discretionary or ministerial. *Malloy v. State,* 76 *N.J.* 515, 388 *A.*2d 622 (1978). The allegations that the planning board negligently granted site plan approval without requiring the installation of a sewer line, and that the board of health wrongly issued permits for the septic systems, clearly fall within this statute.

Because plaintiffs have failed to comply with the notice and filing requirements of the *New Jersey Tort Claims Act,* and because the actions of the planning board and board of health fall squarely within the immunities provided by *N.J.S.A.* 59:2–3 and 59:2–5, defendant's motion for summary judgment as to count II is granted both procedurally and substantively.