ANGEL RIVERA AND RAMONA RIVERA, PLAINTIFFS-RESPONDENTS, v. PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, SUBSIDIARY OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, DEFENDANT-APPELLANT.

Argued October 22, 1985—Decided September 24, 1986.

*Edward J. Fanning* argued the cause for appellant (*Morley, Cramer, Tansey, Haggerty & Fanning*, attorneys; *Edward J. Fanning* and *Thomas M. Kelly*, on the brief).

*Steven J. Boda* argued the cause for respondents (*Juman & Juman*, attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 101 *N.J.* 223 (1985), to review the Appellate Division's determination that plaintiffs' suit for personal injury protection (PIP) benefits under the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 to –20 (No-Fault Act), was not barred by that Act's statute of limitations, *N.J.S.A.* 39:6A–13.1(a). See *Rivera v. Prudential Property and Casualty Ins. Co.*, 197 *N.J.Super.* 34 (1984). We reverse.

I

Plaintiffs, occupants of an automobile, were injured as the result of a two-vehicle collision of July 15, 1979. They were transported from the scene to Muhlenberg Hospital, where they were treated and released the same day. Two days thereafter,

on July 17, 1979, plaintiffs began medical treatment for the injuries they sustained in the accident.

At the time of the occurrence the Rivera vehicle was insured by defendant, Prudential Property and Casualty Insurance Company (Prudential), whose policy provided for the payment of PIP benefits, including medical expense and income continuation benefits, as required by *N.J.S.A.* 39:6A-4. Prudential paid the cost of medical treatment until December 21, 1979. At Prudential's request a Dr. Morton Farker examined plaintiffs on January 14, 1980. On the basis of Dr. Farker's examination report, Prudential determined that it would cease payment of any benefits in connection with the accident, and it so informed plaintiffs by letter dated February 25, 1980. Notwithstanding Prudential's termination of benefits, plaintiffs resumed treatment on or about March 31, 1980, with Dr. Mark Friedman, the same physician who had treated them immediately following the accident in July 1979. Ramona Rivera's treatment was concluded on March 3, 1982; the last available date of treatment for Angel Rivera is June 9, 1982.

Because Prudential resisted their claims for benefits on account of any expenses incurred after the Company's letter of February 25, 1980, plaintiffs filed a Complaint (Complaint I) on February 23, 1982, in Middlesex County District Court, in which they sought judgment of $4000 for medical expenses and plaintiff Ramona demanded judgment of $1000 for lost income. In due course defendant filed an answer [1] and served interrogato-

---

[1] Although Prudential's Answer set up a "statute of limitations" defense, defendant did not pursue it and there is no claim on this appeal that Complaint I was not timely filed. The No-Fault Act requires that suit be filed not later than two years after the last payment of benefits. See discussion *infra* at 36. Even though February 23, 1982, is more than two years after the last previous payment of benefits disclosed by this record—December 21, 1979—we assume that the parties computed the time from the date of Prudential's letter of February 25, 1980. On that basis Complaint I was filed within two years of the last payment of benefits.

ries directed to plaintiffs' medical expense and income loss claims. Because answers to interrogatories were not forthcoming within sixty days after service, as required by Rule 4:17–4, defendant obtained an *ex parte* order on November 24, 1982, dismissing the Complaint, as provided by Rule 4:23–5(a).[2]

The chronology of events following the dismissal of Complaint I was as follows:

1. On December 14, 1982, plaintiffs moved to vacate the dismissal of Complaint I. The motion was accompanied by service of some answers to interrogatories. In an affidavit relied on in support of the motion plaintiffs' attorney "responsible for the handling of" the case gave "secretarial inadvertence and neglect" as the reason for answers to interrogatories not having been "completed within the time prescribed by the Rules." Defendant opposed the motion to vacate, and the court denied it on December 23, 1982.

2. On May 3, 1983, plaintiffs brought another motion to vacate the dismissal of Complaint I. Again defendant resisted the motion. We find no record of or reference to any hearing

---

We need not, and hence do not, decide on this appeal whether that is the correct method of computing the statutory time period. The question has not been raised.

[2]Rule 4:23–5(a) reads as follows:

(a) Dismissal or Suppression. If timely answers to interrogatories are not served and no formal motion for an extension has been made pursuant to *R.* 4:17–4(b), the complaint, counterclaim or answer of the delinquent party shall be dismissed or stricken by the court upon the filing by the party entitled to the answers of an affidavit stating such failure within 60 days from the date on which said answers became due. Thereafter such relief may be granted only by motion. The affidavit shall have annexed thereto a form of order of dismissal or suppression. A copy of all such orders with affidavits annexed shall be served upon the delinquent party within 7 days after the date thereof. On formal motion made by the delinquent party within 30 days after service upon him of the order, the court may vacate it, provided fully responsive answers to the propounded interrogatories are presented and the delinquent party pays costs in the amount of $50.00 to the Clerk of the Superior Court.

on that motion, and, as the Appellate Division observed, it "seems to have been made simply by the submission of a proposed order to the court." 197 *N.J.Super.* at 37. In the absence of any action on the motion, Complaint I remained dismissed.

3. On May 24, 1983, plaintiffs filed another motion—the third attempt—to vacate the dismissal of Complaint I and to reinstate their case to the trial list. Their attorney's affidavit in support of this motion averred that since December 23, 1982, the date on which the court had denied plaintiffs' first motion to restore Complaint I, his firm had been "trying to get my clients' lost wage information for my adversary to no · avail." The affidavit explained that the purpose of the motion was "to restore this matter for all PIP payments for medical bills and reports, excluding lost wages," and "to induce the court to have Prudential * * * pay all bills for treatment caused by this accident." Because the answers to interrogatories remained incomplete even as to certain medical information, Prudential again objected and plaintiffs again failed to pursue their motion. Complaint I therefore remained dismissed.

4. On June 7, 1983, plaintiffs filed a second Complaint (Complaint II), which duplicated Complaint I word-for-word, including the lost income claim of plaintiff Ramona Rivera. (Plaintiffs' Appellate Division brief says the lost-income count was included by inadvertence and that they seek payment only of reasonable medical expenses.) Defendant's answer asserted, among other defenses, the statute of limitations, on the basis of which Prudential moved for summary judgment.

The No-Fault Act's statute of limitations, *N.J.S.A.* 39:6A-13.-1(a), reads:

Every action for the payment of [PIP] benefits * * * shall be commenced not later than 2 years after the injured person * * * suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits.

Based on plaintiffs' failure to have filed Complaint II within two years of February 25, 1980, the date of last payment of benefits (see footnote 1, *supra* ), the trial court granted summary judgment for defendant. Judge Kravarik held:

> This action was instituted * * * some 3½ years [after the date of last payment], which is a year and a half beyond the statute of limitations. An intervening action that was lost or dismissed does not toll the statute of limitations. It could not be revived and the plaintiff now seeks to do indirectly * * * that which he cannot do directly.

The Appellate Division reversed, largely on the basis of *Zaccardi v. Becker*, 88 *N.J.* 245 (1982). The court below acknowledged that "standing alone the second action, having been brought more than two years after both the last compensated medical expenses and the incurring of medical expenses for which defendant did not pay compensation, would have been untimely." 197 *N.J.Super.* at 40. But because *Zaccardi* "plainly * * * allows some delay in the reinstitution of the suit after the dismissal, provided good cause is shown," and because the "good cause" requirement was satisfied by "plaintiffs' attempts to reinstate the case," and because there would be "no prejudice to defendant by allowing the second case," the court below was "satisfied that weighing the equities of the case the action should proceed." *Id.* at 39. The Appellate Division cautioned, however, that "as an outside limit the second case would have to be brought no later than within a period equal to the time allowed by the statute of limitations measured from the time of dismissal," and that "[a] plaintiff desiring to reinstitute an action dismissed after the statute of limitations has run must move with dispatch." *Id.* at 40.

## II

With the exception that *Zaccardi v. Becker, supra,* 88 *N.J.* 245, was a common-law action based on medical malpractice rather than a statutory claim for PIP benefits, and hence was controlled by the two-year statute of limitations in *N.J.S.A.* 2A:14–2, this case is like *Zaccardi* in a significant respect: both involve the interplay between a statute of limitations and a

dismissal under Rule 4:23–5(a) for failure to answer interrogatories. See footnote 2, *supra*. Beyond that the similarity fades.

In *Zaccardi* the plaintiffs sustained injury on March 12, 1974. They filed their first malpractice Complaint on January 20, 1976. The trial court dismissed that suit on July 28, 1976, on the strength of Rule 4:23–5(a). Notwithstanding the dismissal the case remained on the docket for some seventeen months and was adjourned for discovery at least ten times. 88 *N.J.* at 250. The plaintiffs did not alert the trial court to the dismissal and the defendants voiced no objection to the repeated adjournments. *Ibid.* Finally, however, plaintiffs brought a motion on December 28, 1977, to vacate the dismissal and extend discovery for sixty days, which was granted in February 1978. The Appellate Division reversed in September 1978, and in December this Court denied certification. *Zaccardi v. Becker*, 162 *N.J.Super.* 329 (App.Div.), certif. den., 79 *N.J.* 464 (1978).

A month before this Court denied certification in *Zaccardi I*, plaintiffs filed a second complaint, more than four years after the accrual of the cause of action. The trial court dismissed the second complaint, holding that the dismissal of *Zaccardi I* had been final and that the statute of limitations had run. 88 *N.J.* at 250. The Appellate Division affirmed. This Court reversed, stating:

> It is clear that the second complaint in this case was brought more than two years after the date on which the wrong was allegedly committed. Thus, if that fact alone were determinative, the second complaint would be barred by the statute of limitations. *N.J.S.A.* 2A:14–2. However * * * defendant's conduct is relevant to the availability of a statute of limitations defense * * *. [D]efendants took no steps to inform the court that the case had been dismissed or to object to adjournments. Rather they added to the delay while plaintiffs acted under the reasonable misapprehension that the defendants had agreed to the continuation of the case * * *. Having thus significantly contributed to the delay in adjudicating this case, [defendants' counsel] cannot now claim on behalf of his client that the case is stale and ought not to be heard. [88 *N.J.* at 257–58.]

The Court therefore permitted plaintiffs' case to proceed despite the earlier Rule 4:23–5(a) dismissal and the running of the statutory period of limitations.

On this appeal Prudential challenges the Appellate Division's reliance on *Zaccardi*. It first observes that by its own declaration the *Zaccardi* Court itself treated its holding as an exception rather than as the rule and imposed severe limitations on the sweep of the opinion, as indicated by such expressions as "[u]nder the special circumstances presented here," 88 *N.J.* at 249, and "we conclude that under the facts of this case," *id.* at 258, and "[u]nder the unique circumstances of this case," *id.* at 260. Moreover, and most significantly, Prudential points to a critically important feature of *Zaccardi* that distinguishes it from this case: the wrongdoing of the *Zaccardi* defendants— critically important because it was the "wrongs of defendants' counsel" that furnished the springboard for *Zaccardi's* holding that defendants were "equitably estopped from asserting the statute of limitations as a defense." *Ibid.* "Since defendants' own conduct contributed to the delay, plaintiffs are entitled to assert their claims." *Ibid.*

The record here, however, discloses no wrongful or misleading or dilatory conduct of defendant. The Appellate Division acknowledged as much but viewed as "immaterial" the absence of any proof that Prudential misled plaintiffs. 197 *N.J.Super.* at 39. Not only is that feature of the case not "immaterial," it serves to set this case far apart from *Zaccardi*. Without that kind of proof, there is no room for the application of equitable principles in a statute-of-limitations case.

The purposes of statutes of limitations, oft-repeated by this Court, are two-fold: (1) to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and (2) to "penalize dilatoriness and serve as a measure of repose." *E.g., Ochs v. Federal Ins. Co.,* 90 *N.J.* 108, 112 (1982) (quoting *Farrell v. Votator Div. of*

*Chemetron Corp.,* 62 *N.J.* 111, 115 (1973) ); see Note, "Developments in the Law—Statutes of Limitations," 63 *Harv.L.Rev.* 1177, 1185 (1950); J. Williams, "Limitation Periods on Personal Injury Claims," 48 *Notre Dame Law.* 881 (1973); C. Sands, 3 *Sutherland Statutory Construction* § 70.03 (4th ed. 1974); *see also Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 *U.S.* 342, 348–49, 64 S.Ct. 582, 586, 99 *L.Ed.* 788, 792 (1943) ("the right to be free of stale claims in time comes to prevail over the right to prosecute them."). In effect, the legislature has drawn an arbitrary line in creating any statute of limitations. Because that line fixes the time within which suit must be brought, it does not invite variations depending on what the equities of a case may be.

Whatever limited role equitable considerations may play in determining whether the purposes of a statutorily-set limitation period have been served, *see Lopez v. Swyer,* 62 *N.J.* 267, 273–75 & n. 2 (1973) (explaining equitable nature of discovery rule), they find no support in the facts of this case. There was nothing about the information sought that, by its nature, imposed any unusual difficulty in its accumulation. We were told at oral argument, without contradiction from plaintiffs' counsel, that plaintiffs were self-employed. It is therefore difficult to understand why there should be any real problem in obtaining the details of any income loss. The information concerning medical expenses and the nature and extent of injuries is likewise invariably sought and readily produced in any PIP litigation. Neither in the trial court nor at oral argument in this Court did counsel suggest a valid reason for the non-production of answers to interrogatories. There is nothing in the case to suggest the need to balance equities.

Finally, we note plaintiffs' original claim, first made in the trial court [3] but apparently since abandoned, that the filing of

---

[3] At least, we assume, as did Judge Kravarik, that that was the thrust of plaintiffs' attorney's argument:

the first Complaint served to toll the running of the statute, and his belatedly-asserted claim that this case fits into the mold of *Zupo v. CNA Ins. Co.*, 193 *N.J.Super.* 374 (App.Div.), aff'd as modified, 98 *N.J.* 30 (1984). As to the first, aside from the fact that the arithmetic of the tolling period does not salvage plaintiffs' case, ordinarily the filing of a complaint does not act to toll the running of the applicable statute. *Zaccardi v. Becker, supra,* 88 *N.J.* at 258; *Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336, 360 (1984) (dissenting opinion); *Ivins v. Schooley,* 18 *N.J.L.* 269 (Sup.Ct.1841). As for the *Zupo* argument, it rests on this principle: when a carrier has made PIP benefits payments in connection with a compensable injury and is chargeable with knowledge at the time of its last payment that the injury will probably require future treatment, then the two-year-after-payment provision of *N.J.S.A.* 39:6A–13.1 will not bar an action brought within a reasonable time after rejection of a prompt claim for additional medical expenses for such treatment. See 98 *N.J.* at 31–32. The condition in *Zupo* was osteomyelitis. The condition complained of here is back spasms. Nowhere in the argument before the trial court was *Zupo* referred to, nor was there any suggestion that plaintiffs' conditions fell within the *Zupo* principle's "severely limited class of causally-related medical conditions, namely, those whose insidious nature is such that their recurrence after an extended period of apparent cure is probable." *Id.* at 33.

Judgment reversed. No costs on this appeal.

*For affirmance*—Justices CLIFFORD HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—None.

---

Our argument is that the statute of limitations was complied with by the institution of the suit for the PIP benefits and that's what the suit is for, PIP benefits, not for the loss of wages, and that's our argument that the statute of limitations should have been tolled at that point and we are within the compliance of the two year statute.