260 N.J. Super. 133 (1992)
615 A.2d 647
SUSAN L. MOLNAR, PLAINTIFF-RESPONDENT,
v.
DOUGLAS M. HEDDEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1992.
Decided October 27, 1992.
*135 Before Judges PRESSLER, R.S. COHEN and MUIR, JR.
Ronald M. Katkocin argued the cause for appellant (Markwardt & Katkocin, attorneys).
*136 Elizabeth Macron argued the cause for respondent (Gertler & Hanna and Brotman & Graziano, attorneys; Elizabeth Macron and Nicholas Krochta, on the joint brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The important procedural question posed by this appeal is whether a counterclaim arising out of the transaction that gave rise to the complaint is barred if not filed within the applicable limitations period. We hold that although all the considerations generally governing disposition of an untimely motion to amend pleadings are relevant to a late motion to assert a counterclaim, the running of the statute of limitations before the motion is made does not preclude the claim.
On July 16, 1988, plaintiff Susan Molnar, while driving her automobile, collided with a motorcyclist, defendant Douglas Hedden. Both were injured, defendant grievously so. He was rendered a paraplegic. Plaintiff filed a personal injury complaint against defendant in late May 1990, about six weeks prior to the running of the two-year statute of limitations. Defendant turned the complaint over to his carrier for defense, and counsel was assigned to represent him. In due course, some six weeks later, insurance counsel filed an answer in defendant's behalf, alleging, by way of separate affirmative defenses, that plaintiff had been "guilty of contributory negligence in failing to exercise due and proper care under the existing circumstances and conditions" and that her right to recover damages, if any, was limited by "the comparative negligence law." The responsive pleading contained no counterclaim. It also appears that defendant had not, at this time, himself retained an attorney to protect and advance whatever affirmative claims he might have had arising out of the accident, but was represented only by counsel provided by his carrier.
*137 In August 1990, a second complaint was filed in plaintiff's name against defendant.[1] This was actually a subrogation claim in which the real party in interest was plaintiff's carrier, who was seeking reimbursement for the personal injury protection benefits (PIP) it had paid to her. This second complaint was filed by counsel retained by the plaintiff's insurer, not plaintiff's personal injury attorney. It does not appear that an answer to the subrogation complaint was ever filed. In any event, the two complaints were consolidated by order entered on September 14, 1990. Contrary to the prescription of R. 4:38-1(c) requiring the order of consolidation and all subsequent pleadings to include the docket number of each separate action, the September consolidation order referred only to the docket number of the first complaint, a fact which accounts for some of the subsequent procedural confusion.
Nothing in this record suggests what, if any, discovery ensued following the joinder of issue. It does, however, appear that during the summer of 1991, about a year after the filing of the first complaint, negotiations for a settlement of plaintiff's claim were successful. We gather from correspondence between plaintiff's personal injury attorney and defense counsel that plaintiff's personal injury claim was to be settled for $15,000, defendant's policy limit. The snag in consummating the settlement was defense counsel's insistence that the subrogation claim of plaintiff's carrier also be dismissed and defendant be released therefrom. Accordingly defense counsel refused to sign and return the stipulation of dismissal, already executed by plaintiff's personal injury attorney, until appropriate assurances were given by plaintiff's "subrogation" attorney. *138 It does not appear that defense counsel ever signed that stipulation.
Insofar as we are able to reconstruct from this markedly truncated record, this series of procedural steps and missteps ensued. On September 18, 1991, a different stipulation of dismissal was filed which bore the single docket number of the consolidated action. It contained a signature block only for plaintiff's subrogation attorney, and was signed only by that attorney. In his later certification in opposition to this motion, plaintiff's personal injury attorney described that stipulation as a "dismissal in regard to ... [the] subrogation claim." Although not expressly so stated by any of the parties, it appears that the single-signature stipulation of dismissal can be accounted for only if viewed as intending to dismiss the subrogation claim alone. That is, since no answer to that complaint appears to have been filed, the subrogation attorney, overlooking the consequences of consolidation, might have assumed that he could unilaterally dismiss his complaint under R. 4:37-1(a), which permits a plaintiff to do so prior to service of a responsive pleading or motion.
About a month later, the subrogation complaint, under its own separate original docket number, was listed for dismissal for lack of prosecution under R. 1:13-7, presumably because the omission of its docket number from the consolidation order precluded the court's tracking of that action as part of the consolidated action. In any event, an order of dismissal was entered on October 22, 1991, bearing the docket number only of the subrogation complaint. At some unspecified time between June and October 1991, defendant's carrier paid the $15,000 settlement sum to plaintiff. Defendant asserted in his certification in support of his motion for leave to file the counterclaim that he had no knowledge of the settlement and had never been consulted about it by his attorney or the carrier.
In any event, as these matters were proceeding, defendant finally consulted his present attorneys and retained them to act *139 for him and to assert such affirmative claims against plaintiff as he might have. A substitution of attorney dated October 29, 1991, and filed on November 1, 1991, was signed both by defendant's present counsel and the attorney originally assigned by his carrier to defend against plaintiff's complaint.
On November 12, 1991, present counsel filed the instant motion seeking leave for defendant to amend his answer in order to assert a personal-injury counterclaim against plaintiff. Since defendant's cause of action against plaintiff had accrued, as did hers against him, on July 16, 1988, the date of the accident, that motion was consequently filed sixteen months after the running of the statute of limitations. It was on that ground that the trial judge, rejecting defendant's relation-back argument under R. 4:9-3, denied the motion. Defendant appealed, and we reverse.
We start our analysis of the relation-back problem raised by this appeal with a consideration of whether, on November 12, 1991, when the motion for leave to assert a counterclaim was filed, there was still an action pending. We think it plain that the predicate for relation back of a pleading to the date of the filing of an earlier pleading is the pendency of that earlier pleading when the later pleading is asserted. Otherwise, there would be nothing to relate back to. We are therefore satisfied that if plaintiff's action against defendant had been entirely disposed of on the record and was consequently no longer pending on November 12, 1991, the cause of action defendant sought to assert by his late counterclaim would be barred both by the two-year statute of limitations prescribed by N.J.S.A. 2A:14-2 and by the entire controversy doctrine incorporated by R. 4:30A. See Burrell v. Quaranta et al., 259 N.J. Super. 243, 612 A.2d 379 (App.Div. 1992) (holding that a defendant in a personal injury action who fails to file a counterclaim seeking damages from plaintiff for the injuries he suffered in the same accident is barred by the entire controversy doctrine from *140 instituting a separate personal injury action against plaintiff after record termination of plaintiff's action).
We are satisfied that unlike Burrell, in which a stipulation of dismissal executed by all parties was filed prior to the commencement of defendant's action, plaintiff's action against defendant here was still technically pending when he sought to assert his affirmative claim. This is so because there was no record dismissal of that action in its entirety. The order of dismissal bore only the docket number of the subrogation action. The filed stipulation of dismissal was apparently also intended to address only the subrogation action. In any event, that stipulation could not have been effective as a dismissal of the personal injury action in view of an answer to that action having been previously filed. R. 4:37-1(a) requires a stipulation of dismissal to be filed by all parties who have appeared in the action. The stipulation here was defective on its face because it was not signed by defendant or in his behalf. Nor was it signed by the attorney of record for plaintiff who had filed the original complaint.
Holding, therefore, that plaintiff's action was still pending when the motion for leave to amend to assert the counterclaim was filed, we address the question of whether the then pendency of that action saved the counterclaim from the bar of the statute of limitations. The relation-back provisions of R. 4:9-3 have not been considered by our appellate courts in the context of a counterclaim. We are, however, satisfied that application of our well-settled and liberal procedural jurisprudence dictates the conclusion that a counterclaim arising out of the same transaction as pleaded by the complaint and therefore meeting the test of R. 4:9-3  that is to say, a litigation component embraced by the entire controversy doctrine  is eligible for the relation-back principle of the rule and consequently for protection from the limitations bar.
R. 4:9-3 provides in relevant part that:

*141 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading....
As explained by Justice Jacobs in Lawlor v. Cloverleaf Memorial Park Inc., 56 N.J. 326, 339, 266 A.2d 569 (1970), this provision is intended to accommodate the policy of repose underlying statutory limitations periods with the essential judicial task of ensuring substantial justice between litigants. That accommodation, as we said in Wimmer v. Coombs, 198 N.J. Super. 184, 189, 486 A.2d 916 (App.Div. 1985),
... is based on the perception that a person who has timely notice of the pendency of an action predicated on his alleged wrongful conduct cannot reasonably object to the late assertion against him of other claims attributable to that conduct provided he is reasonably chargeable with the knowledge that those other claims would have been timely asserted against him but for plaintiff's error or lack of information and provided further that the late assertion does not prejudice him in maintaining his defense.
Our courts have applied that principle in a variety of situations in order to permit a party to an action belatedly to assert additional components of the controversy against a party-defendant against whom a timely claim has already been asserted provided that the belated claim is related to the timely claim by the entire controversy doctrine. Thus, in Lawlor, the Supreme Court permitted plaintiff to amend the complaint to assert, after the running of the statute of limitations, a direct claim against a third-party defendant where the third-party defendant had been impleaded prior to the running of the statute, where the third-party complaint and the plaintiff's amended complaint alleged the same wrongful conduct, and where the cause asserted both by the third-party complaint and the amended complaint was transactionally related to the original complaint.
In Wimmer we permitted a plaintiff who had asserted only a per quod claim against defendant to amend after the running of the statute to add her personal injury claim which had been omitted inadvertently, which arose out of the same accident, and of which the defendant had prior notice. In Scott v. Garber, 82 N.J. Super. 446, 198 A.2d 103 (App.Div. 1964), rejecting *142 the "same evidence" test in favor of the single-controversy test, we permitted amendment of a complaint after the running of the statute to assert an additional component claim against defendant. See also Harr v. Allstate Insurance Co., 54 N.J. 287, 299-300, 255 A.2d 208 (1969); Campbell v. Union Beach, 153 N.J. Super. 434, 379 A.2d 1295 (App.Div. 1977); Ioannou v. Ivy Hill Pk. Section Four, Inc., 112 N.J. Super. 28, 270 A.2d 295 (Law Div. 1970); DeSisto v. Linden, 80 N.J. Super. 398, 193 A.2d 870 (Law Div. 1963).
In all of these cases the party against whom the late claim was permitted to be asserted was already a defendant. Hence he was already on notice when the amended pleading was allowed of his susceptibility to a judgment against him based on the originally alleged wrongful conduct. In the case of a counterclaim, as here, the party against whom the pleading is sought to be belatedly amended is the plaintiff, whose role in the litigation, at least up to that point, is to assert a claim, not to defend against one. The question then is whether this difference requires a different relation-back result. We hold that it does not.
To begin with, we note that the rules address with specificity the problem of the omitted counterclaim. R. 4:7-4 provides that "When the pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." A counterclaim may, of course, be germane or not germane. It may constitute a component of the litigation required to be pleaded in order to avoid the preclusionary consequences of the entire controversy doctrine, or it may not. See R. 4:7-1. While our courts have not yet apparently addressed the question in a reported opinion, we have no doubt that a germane omitted counterclaim, that is, a compulsory counterclaim as defined by the entire controversy doctrine, qualifies for the relation-back provision of R. 4:9-3. We see no rational basis for differentiating for this purpose between an *143 amended answer adding a germane counterclaim under R. 4:7-4 and any other amended pleading allowed under the general authority of R. 4:9-1. The dispositive consideration is not the rule pursuant to which the amendment is allowed but whether the amended pleading meets the test of R. 4:9-3 by asserting a "claim or defense" that "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading...."[2]
The counterclaim issue has been considered by two trial courts. In Giambuttista v. Bradlees, Inc., 130 N.J. Super. 381, 327 A.2d 256 (Law Div. 1974), the trial court denied a motion for leave to amend a timely answer to assert a personal-injury counterclaim after the running of the statute. We regard its holding, for the reasons we express herein, as overly rigid. In Atlantic City Hospital v. Finkle, 110 N.J. Super. 435, 265 A.2d 853 (Cty.Ct. 1970), the trial judge reached a contrary conclusion. There plaintiff-hospital had sued defendant to recover its bill for services rendered while he was a patient. After the running of the statute of limitations on the claim, defendant sought leave to amend his answer to assert, by way of counterclaim, a personal-injury claim based on a breach of warranty theory. By way of policy justification for permitting him to do so, the trial judge reasoned that:
Statutes of limitations are designed to bar stale claims; to require parties to assert their demands within a fixed time, in order to avoid losing witnesses or evidence that the opposing party ordinarily might have had except for the inordinate passage of time from the inception of the cause of action. Trenton *144 v. Fowler-Thorne Co., 57 N.J. Super. 196 [154 A.2d 369] (App.Div. 1959). However, where the subject of defendant's claim is intertwined with the cause of action advanced by the complaint, timely filed, reason and logic dictate that defendant's claims should not be denied on account of the passage of time.

[110 N.J. Super. at 440, 265 A.2d 853.]
While these concepts both presaged and were reinforced by Lawlor and its progeny, and hence, in our view, were able to stand on their own as the theoretical basis for application of the relation-back provision of R. 4:9-3, the trial judge further relied on the principle of recoupment, correctly noting that a defendant may raise that claim at any time during the pendency of the litigation, even after the statute has run. But the doctrine of recoupment is ordinarily one of commercial application and, more significantly, limits the defendant's recovery on his affirmative claim to the amount claimed against him by plaintiff. See e.g., Beneficial Fin. Co. of Atl. City v. Swaggerty, 86 N.J. 602, 609, 432 A.2d 512 (1981); Gibbins v. Kosuga, 121 N.J. Super. 252, 257, 296 A.2d 557 (Law Div. 1972). It is, therefore, evident that a personal injury counterclaim interposed in an action to collect a bill for the services that allegedly caused the injury and seeking greater damages than are sought by the complaint is, strictly speaking, not properly classifiable as a recoupment.
We are, however, satisfied that there is an alternate theoretical underpinning for excepting the transactionally-related counterclaim from the limitations bar consistent with the policy rationale of Lawlor and consistent as well with the underlying policy of recoupment as a procedural mechanism for permitting "a transaction which is made the subject of suit by a plaintiff to be examined in all its respects, and judgment to be rendered that does justice in view of the one transaction as a whole." Rothensies v. Electric Battery Co., 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296, 299 (1946). In analyzing the cognate federal rules, Professors Wright, Miller and Kane note that the majority of the federal courts have taken the view that "the institution of plaintiff's suit tolls or suspends the running *145 of the statute of limitations governing a compulsory counterclaim." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane Federal Practice and Procedure § 1419 at 152 (1990). See, e.g., Perfect Plastics Industries, Inc. v. Cars & Concepts, 758 F. Supp. 1080 (W.D.Pa. 1991); UST Capital Corp. v. Charter Nat. Life Ins. Co., 684 F. Supp. 757 (D.Mass. 1986); Roberts-Wey v. Seafla, Inc., 613 F. Supp. 1204 (S.D.Ohio 1985); Tri-Ex Enterprises, Inc. v. Morgan Guaranty Trust, 586 F. Supp. 930 (S.D.N.Y. 1984); Oahu Gas Service, Inc. v. Pacific Resources, Inc., 473 F. Supp. 1296 (D.Haw. 1979).
We are satisfied that in this context, a compulsory counterclaim in the federal practice is the practical equivalent of a claim encompassed by the entire controversy doctrine in our practice. And we are persuaded that the federal rationale of tolling in respect of compulsory counterclaims applies fully to our definition of a required component of the controversy. That rationale is summarized by the authors of the treatise as follows:
This approach precludes plaintiff, when the claim and counterclaim are measured by the same period, from delaying the institution of the action until the statute has almost run on defendant's counterclaim so that it would be barred by the time defendant advanced it. Nor is plaintiff apt to be prejudiced by the tolling of the statute, since he presumably has notice at the time he commences his action of any counterclaim arising out of the same transaction as his suit. Moreover, the necessarily close relationship between the timely claim and the untimely counterclaim should insure that the latter is not "stale" in the sense of evidence and witnesses no longer being available; they should be as accessible for adjudicating the counterclaim as they were for the main claim.

[6 Wright et al., supra, § 1419 at 152-53.]
While we subscribe to the view of the treatise,[3] we further note that here plaintiff's notice of her susceptibility to a *146 counterclaim by defendant arising out of the same accident is not just presumed. The answer which was filed, although omitting a counterclaim, did, by way of affirmative defense, charge her with causal negligence. She was thus apprised that proof of her affirmative claim would require a full exploration of the asserted negligence of both parties.
Finally, we point out that there are situations in which only the tolling rationale, and not R. 4:9-3, will be available to save the counterclaim from the bar of the statute of limitations. That is so because R. 4:9-3, by its terms, applies to the relation-back of a claim or defense asserted in an amended pleading. Here, an answer having been previously filed, the counterclaim was sought to be asserted in an amended pleading. But it is also possible that a counterclaim might be sought to be asserted after the running of the statute by way of a first responsive pleading where no prior answer was filed. In that case, the responsive pleading, not constituting an amended pleading, would not be technically subject to R. 4:9-3. But the counterclaim therein asserted would nevertheless relate back to the date of the filing of the complaint under a tolling rationale.
Our conclusion that the counterclaim is not barred by the statute of limitations does not, of course, mean that it is automatically entitled to be pursued. As we said at the outset, it must still meet the standards applicable to all late motions to amend. The interests of justice must be served thereby. The court must be satisfied that there is some facial merit to the claim and that the party seeking relief has not acted in bad faith, for a strategic advantage only, or for purposes of delay or harassment. The failure to have timely raised the issue must, in the circumstances, be excusable. The court must consider whether denial of the motion would be preclusive of the claim under either the statute of limitations, the entire *147 controversy doctrine, or both. The court must be satisfied that permitting the amendment will neither unduly prejudice the adversary in maintaining a proper and effective defense nor unduly compromise the interests of other parties to the action, if any. See, e.g., Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 299-300, 375 A.2d 675 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977). We inquired carefully of counsel as to these matters at oral argument and found nothing to justify a denial of defendant's amendment motion. In the interests of expedition and economy, we therefore elect to exercise our original jurisdiction under R. 2:10-5 by reversing the denial order and directing entry of an order permitting the counterclaim to be filed and served.
We make one final observation. In both this case and Burrell, supra, the defendant who failed to file a timely counterclaim was being represented by an attorney assigned by his insurer to provide a defense to plaintiff's personal injury action. While we do not know from this record exactly why defendant's counsel did not file a counterclaim on his behalf, we nevertheless emphasize that that attorney owes his first allegiance to his client in the action, the insured, and bears the responsibility to represent him properly in all respects. Proper representation obviously includes exploration and preservation of his affirmative claims. Failure to do so, in our view, would constitute an egregious breach of the attorney-client relationship.
The order appealed from is reversed. We remand to the trial court for further proceedings consistent with this opinion.
NOTES
[1] According to the record before us, there were actually two subrogation complaints filed, one in July 1990 and one in August 1990. They are nearly but not quite identical and no reason is suggested in the record for the double filing. It appears, moreover, that only one docket number was assigned to that cause of action.
[2] The federal courts that have construed the federal analogues of R. 4:7-4, 4:9-1, and 4:9-3, namely Fed.R.Civ.Pro. 13(f), 15(a) and 15(c), respectively, are split on the question of whether an omitted counterclaim qualifies for relation back. Stoner v. Terranella, 372 F.2d 89 (6th Cir.1967), concluded that only an amendment allowed under Rule 15(a), not one allowed under 13(f) can qualify. Butler v. Poffinberger, 49 F.R.D. 8 (D.W. Va. 1970), disagrees. Professors Wright, Miller and Kane criticize the reasoning of Stoner and endorse Butler. See 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1496 at 67-70 (1990). We are in full agreement with their analysis.
[3] Our sister states are split on the question of application of the limitations bar to a germane counterclaim. See cases collected in Annotation, Tort Claim Against Which Period of Statute of Limitations Has Run as Subject of Setoff, Counterclaim, Cross Bill, or Cross Action in Tort Action Arising out of Same Accident or Incident, 72 A.L.R.3d 1065 (1976); Annotation, Claim Barred by Limitation as Subject of Setoff, Counterclaim, Recoupment, Cross-Bill or Cross Motion, 1 A.L.R.2d 630 (1948), and later case service.