649 A.2d 71

SUSAN L. MOLNAR, PLAINTIFF-APPELLANT, v. DOUGLAS M. HEDDEN, DEFENDANT-RESPONDENT.

Argued September 12, 1994—Decided November 17, 1994.

*Mark S. Hochman* argued the cause for appellant (*Gertler & Hanna,* attorneys).

*John J. Markwardt* argued the cause for respondent (*Mark-wardt & Katkocin,* attorneys; *Ronald M. Katkocin,* on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 135 *N.J.* 303, 639 *A.*2d 303 (1994), to review the Appellate Division's determination that the statute of limitations did not bar defendant's personal-injury counterclaim. The counterclaim arose out of the same accident that formed the basis of plaintiff's complaint, but defendant did not seek leave to file it until after the two-year period of the statute of limitations had run. Having concluded that plaintiff's action was still pending when defendant sought leave to file his counterclaim, the court below held that under the circumstances defendant's counterclaim was "a litigation component embraced by the entire controversy doctrine" and was therefore "eligible for the relation-back principle of [*Rule* 4:9–3] and consequently for protection from the limitations bar." 260 *N.J.Super.* 133, 140, 615 *A.*2d 647 (1992).

We reverse.

I

On July 16, 1988, an automobile driven by plaintiff, Susan L. Molnar, collided with a motorcycle operated by defendant, Douglas M. Hedden. The collision, which injured both parties, left defendant paralyzed below the waist.

Plaintiff, through her personal attorney, sought recovery for her injuries by filing a complaint against defendant on May 31, 1990, about six weeks before the running of the two-year period of limitations, *N.J.S.A.* 2A:14–2. Defendant, through his attorneys provided by his liability insurer (referred to herein as his "former attorneys"), filed an answer to the complaint on June 27, 1990, about two-and-one-half weeks before the expiration of the statuto-

ry period. The answer included a separate defense of plaintiff's contributory negligence but contained no counterclaim for affirmative relief.

Because Molnar's automobile insurer, Selective Insurance Company (Selective), had paid personal-injury-protection (PIP) benefits to her, it filed a separate complaint in plaintiff's name against defendant on August 20, 1990, seeking reimbursement for its PIP payments, presumably as provided by *N.J.S.A.* 39:6A–9.1. Defendant, however, was never served with that complaint, so he filed no answer to it—despite which the trial court granted Selective's motion to consolidate its suit with plaintiff's suit for personal injuries. The consolidation order, dated September 14, 1990, bears the captions of both cases but carries the docket number of plaintiff's personal-injury case only, with no indication of the docket number of Selective's complaint. See *Rule* 4:38–1(c)(1) (requiring that all papers filed in consolidated action "include the caption and docket number of each separate action, that of the earliest instituted action to be listed first").

After discovery, the parties settled plaintiff's personal-injury claim in June 1991 for $15,000, the limit of defendant's bodily-injury-insurance coverage. Although the record is unclear surrounding the filing of a Stipulation of Dismissal, as we read the various representations of counsel Selective's attorneys, apparently aware that plaintiff's personal-injury case had been settled, "confirmed" on August 15, 1991, that they "would not be pursuing" Selective's claim for reimbursement of its PIP payments. The next day defendant's former attorneys forwarded to plaintiff's attorney a check for $15,000, representing the amount of the settlement. One month thereafter, on September 16, 1991, a Stipulation of Dismissal bearing the caption and docket number of the personal-injury case and signed only by Selective's attorneys was filed with the court.

Thereafter the trial court, on its own motion, gave notice of its intention to dismiss plaintiff's complaint for lack of prosecution. The notice bore the docket number of Selective's complaint. On

October 22, 1991, the court ordered that that action be dismissed without prejudice and that the court's order "not supersede any previously filed judgment, order, stipulation of dismissal or other closing documents of record."

The next phase of the case began on November 1, 1991, when defendant's current attorney filed a notice of substitution of attorney, dated October 29, 1991, and signed by defendant's current and former attorneys. That was followed, on November 12, 1991, by the current attorney's motion to amend defendant's answer to the complaint to assert a personal-injury counterclaim against plaintiff. By that time the statute of limitations' two-year period, which had begun on July 18, 1988, had long since expired. Plaintiff opposed the motion and the trial court denied it.

The Appellate Division reversed. The court below held that the running of the time period set forth in the statute of limitations before a party moves to amend its answer to include a related counterclaim does not, by itself, foreclose that claim. 260 *N.J.Super.* at 136, 615 *A*.2d 647. In so holding, the Appellate Division declared that the initial question in a "relation-back" problem is whether the underlying action is still pending, so that the counterclaim has a cause or a claim to which it can relate back. If the underlying claim is not still pending, the counterclaim is barred by the statute of limitations and the entire-controversy doctrine. *Id.* at 139, 615 *A*.2d 647. Here, the Appellate Division found that at the time defendant sought to assert his counterclaim, plaintiff's action technically was still pending because the trial court's dismissal applied only to Selective's claim for reimbursement. It based that finding on the facts that, first, the dismissal order, which bore the docket number of Selective's action, technically represented the dismissal of only that action; and, second, only the subrogation attorney had signed the stipulation of dismissal of the action bearing the docket number of the personal-injury case, contrary to *Rule* 4:37–1(a), which requires all parties who have appeared in an action to sign the stipulation of dismissal. *Id.* at 140, 615 *A*.2d 647.

After summarizing cases that hold that a plaintiff who has filed a claim within time against a defendant is not time-barred from filing against that defendant additional late claims that have arisen out of the same transaction, the Appellate Division found no difference in notice to the opposing party between a plaintiff who asserts a late claim and a defendant who asserts a late counterclaim. It ruled that therefore a late counterclaim, like a late claim, is eligible for the relation-back principle of *Rule* 4:9-3 and hence is protected from the bar of the statute of limitations if it falls within the entire-controversy doctrine. The court based that ruling on the fact that New Jersey courts apply procedural rules liberally. *Id.* at 140–42, 615 *A*.2d 647.

In so holding, the Appellate Division accepted the proposition that a statute of limitations is designed to bar stale claims, and therefore when a defendant files a late claim that is intertwined with plaintiff's timely-filed cause of action, the statute of limitations should not bar the counterclaim, because the counterclaim would not be stale. *Id.* at 143–44, 615 *A*.2d 647. The court adopted the view that when plaintiffs file suit, they are on notice of possible counterclaims. It noted that that policy is consonant with the federal practice of tolling the statute of limitations for compulsory counterclaims on the assumptions that at the time plaintiffs file their suits, they are on notice of possible counterclaims, and that compulsory counterclaims are not "stale" in the sense of evidence of witnesses having disappeared, because their close relationships to the plaintiffs' timely claims renders their accessibility for adjudication of the counterclaim as likely as for the main claim. *Id.* at 145, 615 *A*.2d 647.

Additionally, the Appellate Division found that plaintiff had actual notice of defendant's counterclaim because defendant had charged plaintiff with negligence as an affirmative defense. *Id.* at 145–46, 615 *A*.2d 647. Therefore, plaintiff "was apprised that proof of her affirmative claim would require a full exploration of the asserted negligence of both parties." *Id.* at 146, 615 *A*.2d 647.

The Appellate Division then declared that even when the statute of limitations does not bar the counterclaim, the counterclaimant must nevertheless first move to file an amended pleading. A motion seeking leave to include a counterclaim must first meet the standards that apply to all late motions to amend. *Ibid.* Those standards require that permitting the amendment would serve the interests of justice and would not unduly prejudice any party to the action; that the counterclaim have facial merit and not be pursued in bad faith; that the failure timely to pursue the counterclaim is excusable; and that the counterclaimant would be unable to bring the counterclaim in a separate action because of the statute of limitations, the entire-controversy doctrine, or both. *Id.* at 146–47, 615 *A.*2d 647. Because the court below was satisfied that the foregoing standards had been met, it reversed the trial court's order denying the amendment and directed the entry of an order permitting the counterclaim to be filed and served. *Id.* at 147, 615 *A.*2d 647.

## II

As we have recently pointed out, the principal consideration behind statutes of limitations is fairness to the defendant. *Grunwald v. Bronkesh,* 131 *N.J.* 483, 496–97, 621 *A.*2d 459 (1993). Limitations periods serve that essential consideration by protecting against the litigation of stale claims, stimulating diligent prosecution of claims, penalizing dilatoriness, and serving as a measure of repose. *Grunwald, supra,* 131 *N.J.* at 497, 621 *A.*2d 459 (stating first three principles); *Rivera v. Prudential Property & Casualty Ins. Co.,* 104 *N.J.* 32, 39, 514 *A.*2d 1296 (1986) (stating fourth).

A statute of limitations represents an "arbitrary line" drawn by the Legislature that "fixes the time within which suit must be bought, [and] it does not invite variations depending on what the equities of a case may be." *Rivera, supra,* 104 *N.J.* at 40, 514 *A.*2d 1296. When a potential claimant knows that he or she has been injured and that the injury is the fault of another,

the statute of limitations begins running. *P.T. & L. Constr. Co. v. Madigan & Hyland, Inc.*, 245 *N.J.Super.* 201, 209, 584 *A.2d* 850 (App.Div.1991). In cases in which courts have permitted a party to pursue a late claim, courts have not extended the statute of limitations but rather have found that because of the relation-back doctrine, the statute did not constitute a bar. See *Cockinos v. GAF Corp.*, 259 *N.J.Super.* 204, 209, 611 *A.2d* 1154 (Law Div.1992) (allowing plaintiff's late claim of wrongful death resulting from exposure to asbestos to relate back to original complaint based on injuries caused by exposure to asbestos). In contrast, when the statute has run, this Court has refused to allow a party to assert a late claim in a case in which the claimant showed no evidence of wrongful or dilatory conduct by the opposing party. *Rivera, supra,* 104 *N.J.* at 39, 514 *A.2d* 1296. If equitable considerations exist, courts use them to determine whether the purposes of the statute of limitations are served by its application, but not to decide whether the statute of limitations ran or was tolled.

█ In determining whether the statute of limitations has run, we are mindful of the admonition stated in *Tackling v. Chrysler Corp.*, 77 *N.J.Super.* 12, 16, 185 *A.2d* 238 (Law Div.1962), that "[c]ourts should disregard subtleties and answer technical objections by an honest effort to determine the real issues on their merits and to do substantial justice between litigants." Looking to the real issues in this case and focusing on concerns of substantial justice, procedural fairness, and prevention of surprise, we are satisfied that the statute of limitations had indeed run by the time defendant sought to file his counterclaim. Both of the claims embraced in the complaints filed in plaintiff's name had effectively been disposed of by that time—the personal-injury complaint by settlement, execution of a release, and payment of $15,000 by defendant's liability insurer; and the PIP-reimbursement complaint by voluntary relinquishment of that claim, followed by the trial court's dismissal for failure to prosecute.

Lawyers' disregard of basic rules of drafting simple documents that are filed routinely in our courts every day—orders of consoli-

dation, stipulations of dismissal—or, worse, their ignorance of those rules, and their failure to abide by the simple requirement of including correct docket numbers on those documents would, were it to become widespread, create havoc with our courts' filing system. Inattention to such rudimentary requirements can make tracking cases next to impossible and can, as here, cause needless confusion to, and unnecessary expenditure of time by, those court personnel who are charged with following the status of civil cases.

The procedural missteps recited above, however, cannot mask the fact that the lawyers in this case knew that by the time defendant's former lawyers sent a check for $15,000 to plaintiff's personal-injury attorney, all existing claims were extinguished. The former lawyers had insisted on receiving closing papers that would close out *all* claims against defendant, and had withheld the personal-injury settlement check until receiving those papers. The PIP carrier's lawyer acknowledged that he gave up the claim for reimbursement of PIP payments the day before the $15,000 personal-injury settlement check was released. And when the lawyers' woefully ineffectual efforts left an undisposed-of case on the court's records—and *only* on the court's records—the trial court entered an order of dismissal. If anything in the procedural confusion of this case is clear, it is that by the time defendant tried to file his counterclaim, nothing remained to which the counterclaim could relate back.

Applying the governing principles to the foregoing facts, we conclude that because the statute of limitations has run, the relation-back doctrine of *Rule* 4:9–3 is inapplicable. The relation-back *Rule* "does not authorize amendment of the pleading to allege a new cause of action against another party to the litigation [that] is barred by the running of the statute of limitations." Pressler, *Current N.J. Court Rules*, comment 1 on *R.* 4:9–3 (1994). That is because ordinarily, after the statute of limitations has run, the opposing party "acquire[s] a vested right to be forever free of [the relevant claim]." *McGlone v. Corbi*, 59 *N.J.* 86, 94, 279 *A.*2d 812 (1971).

Therefore, we do not rule on whether defendant's counterclaim, whether considered germane or new, pressed after the statute of limitations expired but while plaintiff's claim was still "alive" could be saved by virtue of the relation-back doctrine. Because we find nothing to which defendant's amendment can relate back, we save such a determination for a case that provides the proper factual support.

As well, we do not determine whether plaintiff's suit tolled defendant's statute of limitations. The reasons for finding such a tolling is to prevent a plaintiff from waiting until shortly before the statute of limitations has expired to file to prevent a defendant from asserting a cause of action. That circumstance is not present in this case. Nothing in the record suggests that plaintiff delayed filing, and defendant had time within which to file a counterclaim before the running of the statute of limitations. Cases that toll the statute of limitations, thereby allowing the defendant to assert a counterclaim after the statute of limitations would normally have run, do so because of the inherent inconsistency in permitting plaintiffs to amend complaints after the statute of limitations has expired but refusing defendants similar opportunities. Here, plaintiff, having accepted $15,000 in settlement of her claim, could not be heard thereafter to amend her claim or to press a new claim. Therefore, denying defendant an opportunity to pursue his late counterclaim on a "tolling" theory does not create the inconsistency that otherwise might justify a tolling of the statute. The facts of this case do not implicate the tolling question.

### III

Because defendant's motion cannot stand independent of plaintiff's claim, and because we treat plaintiff's claim as dismissed, we reverse the judgment below. No costs.

*For reversal* —Chief Justice WILENTZ and Justices HANDLER, CLIFFORD, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed* —None.