**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3745-20

EILEEN SEGAL,

      Plaintiff,

v.

RECOVERY AT THE
CROSSROADS, BEHAVIORAL
CROSSROADS RECOVERY,
LLC, BEHAVIORAL
CROSSROADS, LLC, and
DEENA LEFKOVITS,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

MICHAEL GITELIS,

      Third-Party Defendant-
      Respondent.

_____

Submitted February 9, 2022 – Decided March 9, 2022

Before Judges Hoffman, Whipple, and Geiger.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1434-19.

Hardin, Kundla, McKeon & Poletto, PA, attorneys for appellant (James L. Fant, of counsel and on the briefs).

Blumberg & Wolk, LLC, attorneys for respondent (Jay J. Blumberg and Erika L. Mohr, on the brief).

PER CURIAM

By leave granted, defendants/third-party plaintiffs[1] appeal from the June 25, 2021 Law Division order denying their motion seeking the dismissal – on statute of limitations grounds – of a counterclaim filed by third-party defendant Michael Gitelis. Because the motion judge correctly found that the counterclaim "relates back" to the date of plaintiff's original complaint, pursuant to Rule 4:9-3, we affirm.

I.

We glean the following facts from the record. On December 7, 2017, plaintiff sustained severe bodily injuries near her home in Brooklyn, New York, when Gitelis assaulted plaintiff. After knocking plaintiff to the ground, Gitelis

---

[1] Plaintiff Eileen Segal filed this action in 2019, asserting claims against defendants Recovery at the Crossroads; Behavioral Crossroads Recovery, LLC; Behavioral Crossroads, LLC; and Deena Lefkovits (collectively, the Crossroad defendants). Defendants operate an outpatient substance abuse rehabilitation facility in Turnersville.

jumped into her Toyota Camry, put the car in reverse, and struck her with the car. A day earlier, Gitelis had been discharged against medical advice by the Crossroad defendants.

Plaintiff filed her complaint on December 3, 2019, four days before the running of the statute of limitations on her claims. Plaintiff's complaint did not include Gitelis as a defendant, only the Crossroads defendants. In relevant part, plaintiff's complaint alleged:

> 7. . . . Michael Gitelis was admitted as a patient at the [Crossroads] . . . on or about December 4, 2017 until . . . he was discharged at his request against medical advice ("AMA")[.]
>
>     . . . .
>
> 11. . . . [O]n or about December 6, 2017, after Mr. Gitelis was informed that the [Crossroads] required that he be transported at the 24[-]hour mark of his signing AMA, Mr. Gitelis became visibl[y] agitated, threatened self-harm as documented by the defendants herein.
>
> 12. At that time . . . Mr. Gitelis then proceeded to leave the [Crossroads][.] [S]taff members tried to assess his emotional state and redirect him back to the location but were unsuccessful.
>
> 13. Thereafter, Mr. Gitelis attempted to steal a staff member['s] car and drive off, at which time [the Crossroad defendants'] staff contacted the local police, requesting immediate assistance.
>
>     . . . .

3

15. Shortly after the police found . . . Gitelis walking down the Black Horse Pike, he returned to [the Crossroads facility], and after requesting a second chance, he was then admitted again by the [d]efendants herein to their facility.

16. After his second admittance to the [Crossroads], that evening, . . . Mr. Gitelis was again displaying threatening behavior towards other people and staff, and demanded he be discharged and driven to a bus station[,] which they apparently complied with.

. . . .

18. At the time Mr. Gitelis left the [Crossroads] facility the second time . . . it should have been abundantly clear that he required a police escort lest he pose a danger to himself and/or others.

19. No police nor law enforcement were contacted[,] despite Mr. Gitelis . . . displaying threatening behavior towards other people, and a lawful duty to do so was required by the New Jersey Duty to Warn Law, and/or be involuntarily committed as required by law.

. . . .

21. After being discharged by the [Crossroad defendants] herein, Mr. Gitelis then stole a vehicle and went on a rampaging crime spree, during which he attacked and seriously injured [plaintiff] in an attempt to rob her on December 7, 2017[,] while in Brooklyn, New York.

22. The plaintiff was seriously and permanently injured as a result of the attack by Mr. Gitelis.

4

On April 24, 2020, the Crossroad defendants were granted leave to file a third-party complaint against Gitelis, which they filed on May 1, 2020. After the court dismissed the third-party complaint for lack of prosecution, the trial court signed a consent order on March 19, 2021, permitting reinstatement of the third-party complaint and permitting Gitelis to file a responsive pleading.

On April 1, 2021, Gitelis filed an answer to the third-party complaint. In his answer, Gitelis asserted eleven separate defenses and a counterclaim against the Crossroad defendants. The allegations in the counterclaim closely mirrored the allegations set forth in plaintiff's complaint, alleging that the Crossroad defendants failed to screen Gitelis for mental illness and involuntary commitment, resulting in his discharge at a time when he was a danger to himself and to others. Gitelis also alleged that the Crossroad defendants "violated the standard of care for facilities . . . trained to evaluate and treat mental health issues as well as substance abuse issues"; as a result, the Crossroad defendants "caused injury to [Gitelis] and others."[2]

---

[2] On July 26, 2021, Gitelis served an affidavit of merit from David T. Springer, MD, who opined that "from [his] review of the records . . . there exists a reasonable probability that the care, skill, and/or knowledge exercised and/or exhibited in the treatment of Mr. Gitelis" by the Crossroad defendants "fell outside the acceptable professional standards and duties required by law[.]"

After the Crossroad defendants filed an answer to the counterclaim, they promptly filed a motion for summary judgment, seeking dismissal of the counterclaim as barred by the statute of limitations. Gitelis opposed the motion, arguing that his counterclaim was timely in the context of this litigation, pursuant to the "relation back" principles set forth in Rule 4:9-3.

Following oral argument, the motion judge entered an order denying summary judgment, rejecting the argument that the counterclaim filed against the Crossroad defendants must be dismissed as untimely. The judge appended to the order a statement of reasons for his decision, explaining that: 1) plaintiff's original complaint was timely filed; 2) plaintiff's complaint alleged that the Crossroad defendants failed to screen Gitelis for mental illness and involuntary commitment, leading to his discharge and the subsequent injury of plaintiff; 3) the counterclaim pled by Gitelis "relates back [to] the claims of the original complaint as both arise from the same conduct and occurrences"; and 4) because the counterclaim "relates back" to the date of plaintiff's complaint, it is not barred by the statute of limitations. The judge also found that genuine issues of material fact exist regarding Gitelis' counterclaim and that a rational fact finder could resolve this matter in his favor. Thereafter, this court granted the

A-3745-20

Crossroad defendants leave to file this interlocutory appeal challenging the motion judge's denial of their summary judgment motion.

II.

We review the trial court's grant or denial of a motion for summary judgment de novo. Branch v. Cream-O-Land, 244 N.J. 567, 582 (2021); Christian Mission John 3:16 v. 63 Passaic City, 243 N.J. 175, 184 (2020); Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We apply the same standard as the trial court and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020)

7

(alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)); see also Brill, 142 N.J. at 540.

The Crossroad defendants argue the motion judge erred when he denied the summary judgment dismissal of the counterclaim against them. They contend the relation-back doctrine does not apply because Gitelis' counterclaim is affirmative in nature, and therefore does not constitute a "germane" counterclaim. They argue the two-year statute of limitations thus bars the counterclaim. We disagree.

In civil actions for personal injury, including actions alleging medical malpractice, the applicable statute of limitations is two years. N.J.S.A. 2A:14-2(a); Martinez v. Cooper Hosp. Univ. Med. Ctr., 163 N.J. 45, 52 (2000). Rule 4:8-1 governs third party practice when a third party is brought in by a defendant: "The third-party defendant shall assert defenses to the third-party plaintiff's claim as provided by R. 4:6 and shall assert counterclaims against the third-party plaintiff . . . as provided by R. 4:7." R. 4:8-1.

Rule 4:7-1 provides that, "a pleading may state as a counterclaim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Comments to Rule 4:7-1 provides support for the motion judge's decision:

Although this rule does not expressly so state, ordinarily a germane counterclaim will not be barred by the statute of limitations if the complaint itself is timely. A germane counterclaim is conceptually akin to an amended pleading that states a claim or defense arising out of the same conduct, transaction, or occurrence as the original claim, and R. 4:9-3 expressly provides for relation back in that situation. The only difference is the identity of the party raising the germane claim, and it would seem to make little functional difference whether a party amends his own pleading to add a germane claim or if the adverse party responds with a germane claim. The policy of the statute of limitations is no more offended in one case than the other.

[Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:7-1 (2022).]

Accordingly, for a germane counterclaim to "relate back" to the filing of the original complaint the following conditions must be met: (1) the original complaint must have been timely filed and (2) the counterclaim must "arise out of the same conduct, transaction, or occurrence as the original claim." R. 4:7-1, at cmt. 4; R. 4:9-3.

We explored this rationale in Molnar v. Hedden, 260 N.J. Super. 133 (1992), rev'd on other grounds, Molnar v. Hedden, 138 N.J. 96 (1994). In an opinion authored by Judge Pressler, we permitted the filing of a germane counterclaim after the expiration of the statute of limitations under the "relation-back" doctrine set forth in Rule 4:9-3. Id. at 140. Judge Pressler reasoned that

9

the "relation back" doctrine could permit the filing of a counterclaim after the expiration of the statute of limitations:

> Application of our well-settled and liberal jurisprudence dictates that a counterclaim arising out of the same transaction as pleaded by the complaint and therefore meeting the test of R. 4:9-3 – that is to say, a litigation component embraced by the entire controversy doctrine – is eligible for the relation back principle of the rule and consequently for protection from the limitations bar.
>
> [Ibid.]

The Court reversed Molnar on other grounds, leaving "open" whether a germane counterclaim "relate[s]-back" to the original complaint when that counterclaim was filed outside the applicable limitations period. Molnar, 138 N.J. at 105. Because the claims embraced in the plaintiff's complaint "had effectively been disposed of by [the] time" the defendant sought to file his counterclaim, id. at 103, the Court concluded that "nothing remained to which the counterclaim could relate back," id. at 105.

Relevant to the matter under review, the Court clarified that

> we do not rule on whether defendant's counterclaim whether considered germane or new, pressed after the statute of limitations expired but while plaintiff's claim was still "alive" could be saved by virtue of the relation-back doctrine. Because we find nothing to which defendant's amendment can relate back, we save such

10

a determination for a case that provides the proper factual support.

[Ibid.]

We are satisfied that this case provides the proper factual support found lacking by the Court in Molnar. Plaintiff's timely-filed complaint remained pending when Gitelis filed his first responsive pleading asserting his counterclaim. Gitelis' counterclaim is clearly "germane" to the claims set forth in plaintiff's complaint, where she asserted causes of action arising out of the failure of the Crossroad defendants to respond appropriately to the dangerous and threatening behavior exhibited by Gitelis during his two stays at their facility, including the failure to notify the police after Gitelis' second departure from their facility.

The counterclaim filed by Gitelis closely mirrored plaintiff's original complaint. Specifically, Gitelis asserted that, upon his second release, an employee of the Crossroad defendants was ordered to escort Gitelis "to the nearest bus station." Gitelis alleged that, given his threatening behavior towards himself and others, the Crossroad defendants should have "screen[ed] and /or involuntarily commit[ed]" him, as required by law.

A comparison of plaintiff's complaint and the counterclaim filed by Gitelis demonstrates that his counterclaim is germane to plaintiff's original cause of

11

action. Gitelis asserted that the Crossroad defendants should have "screen[ed] and /or involuntarily commit[ed]" him because he clearly posed a danger to himself and others. Plaintiff's complaint similarly alleged that the Crossroad defendants should have done more to protect the public from Gitelis based on the obvious threat that he posed to himself and others. Gitelis based his counterclaim on the same facts as plaintiff. We are satisfied that the counterclaim filed against the Crossroad defendants is "germane" to the cause of action plaintiff alleged in her complaint, allowing for application of the "relation-back" doctrine. Clearly, the facts absent in Molnar are present here.

Any arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3745-20