**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1831-16T2

320 ASSOCIATES, LLC,

    Plaintiff-Appellant,

v.

NEW JERSEY NATURAL GAS CO.,

    Defendant-Respondent.

_____

Argued June 5, 2018 — Decided June 29, 2018

Before Judges Reisner, Mayer, and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1180-16.

Marguerite Kneisser argued the cause for appellant (Carluccio, Leone, Dimon, Doyle & Sacks, LLC, attorneys; Stephan R. Leone, of counsel; Marguerite Kneisser, on the briefs).

Lisa S. Bonsall argued the cause for respondent (McCarter & English, LLP, attorneys; Lisa S. Bonsall, of counsel and on the brief; J. Forrest Jones and Stephanie A. Pisko, on the brief).

PER CURIAM

Plaintiff, 320 Associates, LLC, appeals from a December 5, 2016 order, granting summary judgment in favor of defendant New Jersey Natural Gas (NJNG) and dismissing plaintiff's complaint on statute-of-limitations grounds.[1] We affirm in part and remand in part.

I

Plaintiff owns a piece of commercial property located just to the north of NJNG's property. On May 2, 2016, plaintiff filed a six-count complaint asserting that NJNG's property was polluted with coal tar, discharged as the result of industrial operations on NJNG's land decades earlier. Plaintiff asserted that the coal tar pollution on NJNG's property resulted in the migration of coal tar plumes (migration) onto plaintiff's land.

Plaintiff asserted that it first learned of the migration in 2008. Plaintiff alleged that it had its land tested in 2007, after cleaning up pollution from leaking underground storage tanks (USTs) on its own property and putting down clean soil. In 2007, plaintiff's property was found to be clean. However, when the property was tested again in 2008, more pollution was found, but this new pollution was attributable to migrating coal tar plumes

_____

[1] Defendant filed a motion to dismiss, which the court converted to a summary judgment motion, because the parties submitted materials outside the pleadings. See R. 4:6-2(e).

from NJNG's land. Plaintiff has not tested its property since 2008.

Plaintiff claimed that, as a result of the newly discovered pollution, it could not sell its property to a current commercial tenant. Plaintiff asserted that the tenant had leased the land from 2006 through 2016, with an agreement to buy, but the agreement required plaintiff to obtain an unconditional "no further action" letter from the Department of Environmental Protection (DEP).[2] Plaintiff claimed that it could not obtain such a letter due to NJNG's failure to abate the pollution. As a result, the tenant terminated the purchase agreement on April 4, 2014. To mitigate damages, plaintiff extended the tenant's lease through 2023. Plaintiff asserted that the pollution from NJNG's land had decreased the value of plaintiff's land and might negatively affect plaintiff's future ability to either sell or lease the property.

The complaint further asserted that in 2011, NJNG obtained a remedial action workplan from Haley & Aldrich, Inc., which called for a clean-up of NJNG's property and plaintiff's property. Plaintiff asserted that in 2012, NJNG had "indicated" that "based on the estimated amount of time to complete the initial remediation

---

[2] Plaintiff's brief states that the DEP no longer issues "no further action" letters, but instead a property owner may obtain a Response Action Outcome (RAO).

work," it planned to start the remediation project on plaintiff's property in spring 2015. However, the 2016 complaint alleged that NJNG had not yet undertaken any remedial actions on plaintiff's property. The complaint did not directly address whether NJNG had already cleaned up its own property, but it could be read as implying that NJNG had not done so.

Based on those essential facts, which were repeated throughout the complaint, plaintiff asserted claims for negligence, per se negligence, strict liability, violation of the Spill Act, violation of the New Jersey Environmental Rights Act,[3] nuisance, and trespass. In each count of the complaint, plaintiff sought the same relief, including damages for the lost sale or rental value of its property, and injunctive relief requiring NJNG to clean up the pollution on NJNG's property and on plaintiff's property.

NJNG filed a motion to dismiss, supported by authenticated copies of documents referenced in plaintiff's complaint, and two letters from plaintiff's attorney. See R. 4:18-2. Those documents included a 2003 remedial investigation workplan prepared by

_____

[3] On this appeal, plaintiff did not brief its Environmental Rights Act claims and the related Spill Act claims, and those statutory claims are, therefore, waived. Plaintiff did not separately brief its trespass claims, treating them as essentially the same as its nuisance claims. We will not separately address the trespass claims.

Environmental Evaluation Group, in connection with an investigation of pollution from the USTs on plaintiff's property. The report referenced the possible migration of pollution from NJNG's property onto plaintiff's property. A February 28, 2006 proposal from Brinkerhoff Environmental Services, Inc. to plaintiff, addressing removal of the USTs, also stated that "a co-mingled groundwater contaminant plume and contaminated soil" on plaintiff's property was "impacted" by both former industrial operations on NJNG's property and the leaking USTs on plaintiff's property.

NJNG also submitted with its motion a copy of the lease and lease extension between plaintiff and plaintiff's tenant. The lease, dated July 28, 2006, contemplated a sale if plaintiff could obtain an unconditional no further action letter from the DEP. On April 4, 2014, plaintiff entered into a lease extension with the tenant, acknowledging the presence on the property of coal tar residue from NJNG's property. The lease also recited that NJNG had prepared a remedial workplan "that is in the process of being approved by the [DEP]." The tenant agreed to allow NJNG to perform remediation work on the leased property.

In its opposition, plaintiff relied on some additional documents, including an August 3, 2011 environmental assessment of plaintiff's property. This report noted that the March 2008

testing showed an increase in groundwater contamination, but attributed the increase to "recontamination of the area from the [NJNG property] coal tar plume" rather than leakage from the USTs. An additional report, dated April 7, 2011, prepared for NJNG and submitted to DEP, detailed the history of the pollution on NJNG's property and neighboring land and NJNG's plans for remediation. The plan included a proposal to clean up plaintiff's property, reciting that "A Deed Notice will be established for [plaintiff's land] incorporating the institutional and engineering controls necessary for commercial and industrial use of this property, subject to property owner consent."

Plaintiff's submission also included a 2015 proposal from an environmental engineering firm. The firm proposed further sampling of plaintiff's property and development of a plan to work with NJNG to complete the clean-up and obtain a RAO from DEP. Plaintiff's submission also included an August 19, 2014 letter from plaintiff's attorney to NJNG's senior environmental engineer. The letter insisted on retaining plaintiff's right to pursue damages for loss of value to its property, as a condition of allowing NJNG to enter on plaintiff's land for remediation purposes. A second letter sent in 2015 recited similar concerns, and enclosed an appraisal report opining that plaintiff had suffered losses of about $2.5 million. Thus, it appears that the

remediation process may have stalled due to a dispute over plaintiff's monetary demands.

## II

Our review of the trial court's decision is de novo, using the same standard employed by the trial court. See Townsend v. Pierre, 221 N.J. 36, 59 (2015) (summary judgment); State ex rel. Campagna v. Post Integrations, Inc., 451 N.J. Super. 276, 279 (App. Div. 2017) (motion to dismiss). On a summary judgment motion, the facts must be viewed in the light most favorable to the non-moving party. Townsend, 221 N.J. at 59; Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995). Likewise, in reviewing a motion to dismiss filed under Rule 4:6-2(e), "we assume that the allegations in the pleadings are true and afford the pleader all reasonable inferences." Sparroween, LLC v. Township of West Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017) (citation omitted).

In this case, the parties agree that the applicable statute of limitations (SOL) is the six-year SOL for tortious injury to real property. N.J.S.A. 2A:14-1. Ordinarily, a cause of action will accrue when "the right to institute and maintain a suit first arose." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 395 (2016) (citation omitted). Under the discovery rule, however, "a cause of action will be held not to accrue until the injured party

discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Belmont Condo. Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 83 (App. Div. 2013) (quoting Lopez v. Swyer, 62 N.J. 267, 272 (1973)).

Based on the facts as recited above, we agree with the trial court that plaintiff's claim for permanent diminution in the value of its property, however characterized in the complaint, was untimely. Plaintiff's claim is based on a permanent loss in the value of its land, due to the migration of coal tar contaminants from NJNG's property. Arguably, plaintiff first learned about this problem in 2003 or in 2006. However, viewing the evidence in the light most favorable to plaintiff, at the latest it learned about the condition in 2008. Thus, the six-year statute of limitations for a damages claim based on permanent diminution in the value of the property began to run in 2008 and expired in 2014. See P.T. & L. Const. Co., Inc. v. Madigan & Hyland, Inc., 245 N.J. Super. 201, 209 (App. Div. 1991) ("[O]nce a party knows that it has been injured and that the injury is the fault of

another, it has the requisite knowledge for the applicable period of limitations to commence running.").[4]

We likewise reject plaintiff's negligence argument, which it asserts by analogy with the Spill Act, that migration constitutes a new "discharge" of pollutants every time it occurs. Contrary to plaintiff's argument, the discharge of pollutants on NJNG's property occurred decades ago. The migration of those pollutants onto plaintiff's land does not constitute a new discharge. See White Oak Funding Inc. v. Winning, 341 N.J. Super. 294, 299-300 (App. Div. 2001); see also N.J. Dep't of Env. Prot. v. Dimant, 418 N.J. Super. 530, 544 (App. Div. 2011), aff'd, 212 N.J. 153 (2012). The trial court correctly dismissed plaintiff's negligence claim.

We reach a different conclusion with respect to plaintiff's nuisance claim, insofar as plaintiff requests a court order requiring NJNG to complete the clean-up of its own property and plaintiff's property. Viewed favorably to plaintiff, there appears no dispute that NJNG can implement a clean-up. The record suggests that NJNG may be unwilling to do so unless plaintiff waives any claim for money damages; that dispute may be driving this lawsuit.

---

[4] Plaintiff's equitable estoppel claim is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

As the Supreme Court held in <u>Russo Farms v. Vineland Board of Education</u>, if a nuisance can be abated, the failure to abate constitutes a continuing tort that entitles a plaintiff to relief. 144 N.J. 84, 103-04 (1996). If a nuisance cannot be abated, there is no continuing tort, and the statute of limitations begins to run when the defendant creates the harmful condition. <u>Id.</u> at 103. Arguably, under the discovery rule, the SOL might be tolled until a plaintiff discovers the harmful condition. However, once it is discovered, the SOL begins to run. See <u>Lopez</u>, 62 N.J. at 272.

In this case, to the extent plaintiff claims that its land can never be remediated to the point where it can obtain a RAO, thus permanently diminishing the land's value, or that the pollution of NJNG's property is a permanent condition that diminishes the value of plaintiff's land, those claims are barred by the SOL. See <u>Russo</u>, 144 N.J. at 103. Plaintiff knew about the ongoing pollution in 2008 and could have learned about the diminution in the value of its land had it chosen to investigate the issue then.

However, to the extent plaintiff claims that its property can be remediated, and that NJNG can remediate its own property, it has the right to pursue its demand that defendant proceed with the remediation. See <u>Interfaith Cmty. Org. v. Honeywell Int'l, Inc.</u>, 263 F. Supp. 2d 796, 857 (D.N.J. 2003). Plaintiff may also be

entitled to damages, if any accrued within the six-year SOL, due to unreasonable delay in abating the nuisance. However, it would be premature to decide now if plaintiff is in fact entitled to damages, or any other relief, because the parties have not completed discovery and the record is inadequate.

For example, plaintiff's complaint asserts that NJNG's remediation plan called for NJNG to start cleaning up plaintiff's property in 2015. Plaintiff's complaint does not assert that was an unreasonable schedule. Yet, according to plaintiff, its tenant canceled the purchase agreement in 2014.

Also missing from this record is any legally competent evidence of DEP's actual approval of any plan, any particular time-frame for remediation, or any particular required level of remediation. Nor is there evidence of how that remediation level will affect the legally permitted uses of the property.[5] That information may be relevant to whether NJNG has acted reasonably or unreasonably. It may also be relevant to whether plaintiff can enforce a remedy if that remedy is inconsistent with actions that

---

[5] Because NJNG filed its application as a motion to dismiss in lieu of an answer, the parties had not taken discovery, other than preliminary discovery of documents referenced in the complaint, under Rule 4:18-2. The parties also did not present certifications of corporate employees or officers having personal knowledge of facts. Nor did either side present expert reports elucidating the parties' dueling environmental theories.

A-1831-16T2

DEP has permitted or required. Those issues, however, are not ripe for our consideration and we do not address them. See <u>Lyons v. Township of Wayne</u>, 185 N.J. 426, 434-35 (2005) (finding summary judgment on a continuing nuisance claim was "inappropriate" due to the unsatisfactory record).

In summary, viewing the complaint and the limited documentary record in the light most favorable to plaintiff, we conclude that the trial court acted prematurely in dismissing plaintiff's nuisance claims. We remand for the purpose of reinstating those claims and proceeding with discovery.

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1831-16T2